[660 NYS2d 119]

SKR Design Group, Inc., Respondent-Appellant, v Yonehama, Inc., Appellant-Respondent, et al., Defendant.

Yonehama, Inc., Counterclaim Plaintiff-Appellant-Respondent, v SKR Design Group, Inc., et al., Counterclaim Defendants-Respondents-Appellants.

First Department, June 24, 1997

### APPEARANCES OF COUNSEL

*Regina C. Saat* of counsel, New York City *(Greenberg, Trager, Toplitz & Herbst,* attorneys), for respondents-appellants.

*David A. Robinson,* New York City, for appellant-respondent.

### OPINION OF THE COURT

Mazzarelli, J.

Defendant Yonehama is in the business of owning and operating restaurants. In 1992, it signed a 10-year lease with the Port Authority for restaurant space in the Northeast Plaza Building of the World Trade Center. During the bidding process for the design and construction of the restaurant, the plaintiff, SKR Design, submitted numerous proposal letters to Yonehama on its letterhead bearing the legend "Interior Designers Planners Architects." In the letters, SKR Design stated that it provided "architectural and interior design services," and that at no additional cost it would "revise construction documents consisting of architectural and engineering drawings."

In April 1993, Yonehama and SKR Design entered into a written contract in which SKR Design agreed to provide construction and design services to Yonehama for $650,000, plus reasonable expenses. The restaurant was completed, and SKR Design was paid at least $625,000. However, due to construction delays and other disputes, Yonehama terminated the contract and refused to make any further payments.

SKR Design commenced this action in August 1994, asserting, *inter alia,* causes of action for breach of contract, unjust enrichment and a declaratory judgment that the contract between the parties was valid. Yonehama answered the complaint and, insofar as is pertinent to this appeal, asserted three

affirmative defenses and three counterclaims.* The thrust of these defenses and counterclaims is that the contract was void and unenforceable because SKR Design had fraudulently misrepresented itself as a corporation licensed to perform architectural services, and had illegally performed those services. Although Yonehama and SKR Design had previously contracted with each other, Yonehama claimed that it discovered SKR Design's unlicensed status only after SKR Design commenced this action.

Yonehama moved for summary judgment dismissing the complaint on the ground that the contract was void as against public policy under the Education Law. SKR Design cross-moved to dismiss those defenses and counterclaims that alleged that the contract was void. The IAS Court denied both the motion and the cross motion, finding that a triable issue of fact existed as to whether SKR Design was authorized to enter into the contract, and to perform its contractual duties.

Under the Education Law, only those persons licensed or otherwise authorized to practice architecture may do so, and may use the title "architect" (Education Law § 7302). It is a class E felony to practice, offer to practice, or to hold oneself as being able to practice a profession where a license is required, but not obtained (Education Law § 6512 [1]). Further, only a professional corporation formed to practice architecture, or other related professions, may contract with another party to perform architectural services (Education Law § 7307 [2]; Business Corporation Law § 1503 [a]; *Charlebois v Weller Assocs.*, 72 NY2d 587, 592). It is undisputed that SKR Design is not a professional corporation, but rather a regular business corporation (*see*, Business Corporation Law §§ 401, 402), and thus was prohibited from entering into a contract for architectural services.

SKR Design asserts that this contract did not run afoul of the Education Law because it neither performed any architectural services, nor did it contract to do so. As evidence of the former, SKR Design submitted uncontradicted proof that all of the architectural work was done by a licensed architect, Oran Mills, R. A. It demonstrated that all formal plans utilized on the project were signed, sealed and stamped pursuant to Education Law § 7307 (1) by Mills, and further produced numerous invoices showing the fees paid by SKR Design to Mills. Yone-

* Harold Kahn, a licensed architect and shareholder of SKR Design, was also made a counterclaim defendant by Yonehama.

hama has produced no evidence that SKR Design itself performed any architectural services, but points to the representations in SKR Design's *proposals* to suggest that it did.

To refute the accusation that it misrepresented its status, SKR Design relies on specific provisions of the contract. Paragraph 2.1.1 provides that "[d]esign services shall be performed by qualified architects, engineers and other professionals selected and paid by the Design/Builder [SKR Design]." Paragraph 2.2.4 specifies that "the Design/Builder shall provide or cause to be provided and shall pay for design services". And, paragraph 11.9 states that "[i]n case of termination of the architect, the Design/Builder shall provide the services of another lawfully licensed person or entity against whom the Owner makes no reasonable objection." SKR Design argues that these provisions demonstrate that the contract expressly called for it to *obtain* the services of a "qualified architect," and did not expressly or impliedly require it to perform the services itself.

SKR Design's argument is supported by the Court of Appeals decision in *Charlebois v Weller Assocs. (supra)*. In *Charlebois*, the owners engaged a contractor to build a warehouse and an addition to an existing building. The contract provided that in addition to construction services, the contractor would " 'furnish' " architectural and engineering services, which would be provided by " 'James M. Weller, P. E.' ", a licensed architect *(supra,* at 591). After a dispute arose over the cost, design and other alleged defects, the contractor commenced an arbitration proceeding to recover $600,000 in construction costs. In response, the owners commenced an action seeking a declaration that the contract was invalid under the Education Law because the contractor was not a licensed corporation authorized to perform engineering services.

The Court of Appeals affirmed the findings of both the Supreme Court and the Appellate Division upholding the validity of the contract. Initially, the Court stated that if the contractor "either contracted itself to engage or actually engaged in the practice of engineering, then the licensing proscription would surely have been violated" *(Charlebois v Weller Assocs., supra,* at 592). Recovery would be barred, the Court added, even if the contractor had substantially performed the work since " 'the purpose of the regulatory scheme is to protect the public health and safety' " *(supra,* at 592, quoting *Richards Conditioning Corp. v Oleet,* 21 NY2d 895, 896).

The Court noted, however, that this was not an "absolute or per se rule" (*Charlebois v Weller Assocs., supra,* at 593; *see also, Bronold v Engler,* 194 NY 323). On the contrary, it held that the policies underlying the Education Law were not violated where the contract expressly requires that the contractor "engage a specified licensed person or professional corporation to perform the tasks for which the law specifically requires a license" (*supra,* at 593; *see also, Vereinigte Osterreichische Eisen und Stahlwerke v Modular Bldg. & Dev. Corp.,* 64 Misc 2d 1050, *mod on other grounds* 37 AD2d 525). It also held that even if a statutory violation had occurred, complete avoidance of the contract would "impose a disproportionate and unnecessary remedy and price" (*supra,* at 595).

It is undeniable that the contract in this case also called for the retention of a "qualified"—i.e., licensed—architect to perform the regulated services. That a contractor engages the services of a licensed professional to perform a portion of the services covered by the contract does not convert that contract into one for the performance of those services (*Charlebois v Weller Assocs., supra; Facilities Dev. Corp. v Miletta,* 180 AD2d 97, 103). Yonehama's claim that SKR Design represented that SKR Design *itself* would perform the architectural services is contradicted by both the language of the contract and the fact that the plans were signed and sealed by the licensed architect. Thus, no triable issue of fact exists as to any Education Law violations (*cf., Cupples Prods. Div. v Morgan Guar. Trust Co.,* 199 AD2d 206; *Chipouras & Assocs. v 212 Realty Corp.,* 156 AD2d 549).

Yonehama's attempt to distinguish *Charlebois* is unavailing. It argues that pivotal to the Court of Appeals decision was that the licensed person was *actually specified* in the contract. While that certainly lent support to the Court's holding, we believe Yonehama overstates its significance. Since the purpose of the licensing requirements is to ensure that the regulated work is performed by those with the necessary skills and training, we see no reason why the contract must designate a specific person. Where a licensed architect performed all of the services despite not being named in the contract, as here, the effectiveness of the regulatory scheme is not weakened. This is true because the licensed professional selected remains "inescapably subject to the educational, regulatory and punishment mechanisms of the licensing entity" (*Charlebois v Weller Assocs., supra,* at 592). Ultimately, it is a specific license, not a specific name, which the law requires.

In *Charlebois*, as here, all the work was performed by a licensed person, and was substantially completed at significant cost. It would be improper for the Education Law to be used "as a sword for personal gain rather than a shield for the public good" (*supra*, at 595; *see also*, *Sutton v Ohrbach*, 198 AD2d 144).

Yonehama's remaining contentions are without merit.

Accordingly, the order of the Supreme Court, New York County (Richard Lowe, III, J.), entered September 13, 1996, which (1) denied defendant-appellant Yonehama's motion for summary judgment, and (2) denied its motion for leave to serve supplemental counterclaims; and which denied plaintiff-respondent SKR Design's and counterclaim defendant Kahn's cross motion for partial summary judgment dismissing Yonehama's fourth, fifth and sixth affirmative defenses, and third, fourth and fifth counterclaims, should be modified, on the law, to the extent of granting SKR Design's and Kahn's cross motion for partial summary judgment dismissing the fourth, fifth and sixth affirmative defenses, and its third, fourth and fifth counterclaims, and otherwise affirmed, without costs.

SULLIVAN, J. P., MILONAS and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered September 13, 1996, modified, on the law, to the extent of granting SKR Design's and Kahn's cross motion for partial summary judgment dismissing the fourth, fifth and sixth affirmative defenses, and its third, fourth and fifth counterclaims, and otherwise affirmed, without costs.