# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 18, 2010          Decided May 28, 2010

No. 08-5119

ABDULWAHAB NATTAH, LEAD PLAINTIFF IN A CLASS OF TITAN EMPLOYEES,
APPELLANT

v.

GEORGE W. BUSH, IN HIS INDIVIDUAL CAPACITY, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-00700-RCL)

*Abdulwahab Nattah*, appearing *pro se*, argued the cause and filed the briefs for appellant.

*Marina Utgoff Braswell*, Assistant U.S. Attorney, argued the cause for federal appellees. With her on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

*John F. Scalia* argued the cause for appellee L-3 Services, Inc. With him on the brief was *Matthew H. Sorensen*.

Before: SENTELLE, *Chief Judge*, HENDERSON and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*:  Pro se appellant Abdulwahab Nattah challenges the district court's order granting, *inter alia*, L-3 Communications Titan Group's[1] (L-3) motion to dismiss and dismissing his complaint with prejudice as to all defendants and all claims.  We affirm the district court's order in part, but remand for further proceedings on Nattah's non-monetary claims against the Secretary of the Army and his breach of contract claim against L-3.

I

These are the relevant facts as Nattah alleges them in his amended complaint.  Sometime before January 17, 2003, Nattah, who claims he is a dual citizen of Libya and the United States, attended a "career fair" for applicants to L-3, at which individuals who claimed they had authority to contract on behalf of L-3 offered Nattah a job as an Arabic language interpreter.  First Am. Compl. ¶¶ 92, 281, *Nattah v. Bush*, No. 06-cv-00700 (D.D.C. Mar. 31, 2008).   The L-3 agents informed Nattah he would work only in Kuwait, would be housed in a luxury air-conditioned apartment building with access to restaurants and stores, and "under no circumstances" would be sent to Iraq.  *Id.* ¶¶ 22, 93–94, 280.  The agents also told Nattah he could be fired only for misconduct, lack of work due to termination or diminution of L-3's contract with the United States government, or dereliction of duty.

---

[1] Although several different names have been used throughout the proceedings in this case, it appears the correct current entity name is L-3 Services, Inc.

*Id.* ¶¶ 22, 95. In reliance on L-3's promises, Nattah accepted the employment offer. *Id.* ¶¶ 96, 282. On January 17, 2003, he signed a letter from L-3 providing further detail about his employment but stating the letter should not be construed as an employment contract. *Id.* ¶¶ 23, 97, 283; (J.A. 61–62). Upon arriving in Kuwait, Nattah alleges he was sequestered in a military encampment located in the desert and required to live in a tent with forty soldiers, eat distasteful food, and live under substandard conditions. First Am. Compl. ¶ 99. He further alleges that after spending two months in Kuwait, L-3 "sold [him] as a slave to the [U.S.] military," *id.* ¶ 101, who took him to Iraq and forced him to serve on the front line of the Iraq invasion, *id.* ¶¶ 25, 101–03, 291. During that period, Nattah suffered nerve damage from close artillery explosions that caused hearing loss and other medical problems. *Id.* ¶¶ 34, 112. Nattah was examined at a clinic in Iraq and travelled to Germany for additional treatment. *Id.* ¶ 112. After Nattah's departure, L-3's Deputy Director for Operations visited Nattah's barracks in Iraq and informed the soldiers housed there Nattah was on leave without pay and "did not belong there anymore." *Id.* ¶ 114. Several weeks later Nattah was transferred to another German hospital, where he underwent two surgeries. *Id.* ¶ 117. He was discharged from the hospital on July 23, 2003, and traveled back to the United States the following day. *Id.*

Nattah filed his complaint in the district court on April 19, 2006. He alleged twenty separate claims against multiple defendants, including former President George W. Bush, former Vice President Richard Cheney, former Secretary of Defense Donald Rumsfeld, "Six Unknown United States Government Employees," and L-3. On January 30, 2007, the district court granted the government's motion to dismiss Nattah's claims against Bush, Cheney, and Rumsfeld. L-3 filed a motion to dismiss on March 12, 2007. On November

28, 2007, while L-3's motion to dismiss was still pending, Nattah filed a motion to vacate the district court's January 30, 2007 order and sought leave to amend his complaint to add a new federal defendant—Francis Harvey, then-Secretary of the Army—and to pursue additional claims against the six unknown federal employees. Nattah claimed he had not previously been able to determine which agency—the Department of Defense or the Department of the Army—had employed the individuals responsible for his alleged abduction into slavery. He filed a proposed amended complaint along with his motion for leave to amend. The amended complaint alleged claims against, among other defendants, Secretary Harvey, "Six Unknown United States Government Employees," L-3, and the Iraqi National Congress. It included claims of slavery, intentional infliction of emotional distress, fraud, breach of contract, and alleged violations of the Geneva Convention, Hague Convention, and United Nations Charter, as well as several other claims based on state and foreign law.

The district court granted Nattah's motion for leave to file an amended complaint in part, denied his motion to join additional defendants, denied his motion to vacate, and granted L-3's motion to dismiss. *Nattah v. Bush*, 541 F. Supp. 2d 223, 226 (D.D.C. 2008). The district court also, on its own motion, refused to allow Nattah to add the Iraqi National Congress, Dr. Ahmed Chalabi, and the pseudonymous intelligence source "Curveball" as defendants. *Id.* at 231. This appeal followed.

II

On appeal, Nattah does not contest every holding of the district court; we consider only those that he does and agree with two of his claims of error.

A. *Nattah's motion for leave to join Secretary Harvey*

Nattah challenges the district court's denial of his motion for leave to join former Secretary of the Army Francis Harvey. Under FED. R. CIV. P. 15(a)(1), a plaintiff may amend his complaint once, as a matter of right, anytime "before being served with a responsive pleading."[2] FED. R. CIV. P. 15(a)(1)(A) (2007). In this case, none of the defendants filed an answer to Nattah's complaint. L-3 filed a motion to dismiss, but "a motion to dismiss is not a responsive pleading for the purposes of Rule 15." *James v. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 283 (D.C. Cir. 2000). Because Nattah therefore was entitled as a matter of right to amend his complaint to add Secretary Harvey as a defendant, it was error for the district court to refuse to consider the claims he added. *See id.* However, not all such errors require remand. *See id.* "[A] district court need not be made to reconsider an amended complaint that fails to state a claim upon which relief could be granted, or that would otherwise fail as a matter of law. . . . [N]o remand is necessary if the amended complaint would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Id.* We therefore consider whether the amended

---

[2] Effective December 1, 2009, Rule 15(a) was amended to provide that a plaintiff may amend his complaint once "as a matter of course" within twenty-one days after the complaint is served or, if the pleading is one to which a responsive pleading is required, within twenty-one days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier. FED. R. CIV. P. 15(a)(1) (as amended). In all other cases, a party may amend its pleading only with the written consent of the opposing party or leave of the court. *Id.* at 15(a)(2).

claims against Secretary Harvey would survive a motion to dismiss.

Nattah brings several claims against Secretary Harvey: violation of the Geneva Convention (Count III); slavery (Count V); right to travel (Count VI); and violations of international law (Count XIX). The district court held Nattah's claims against Secretary Harvey would not survive a motion to dismiss because "the Government is immune from suit and has not explicitly waived immunity," *Nattah*, 541 F. Supp. 2d at 231. The court's reasoning overlooks section 702 of the Administrative Procedure Act, 5 U.S.C. § 702, waiving sovereign immunity for claims "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." For each claim brought against Secretary Harvey, Nattah seeks injunctive, declaratory, and equitable relief in addition to monetary relief. First Am. Compl. at 84–88. Moreover, as the federal Appellees concede, Nattah's claims are made against the Secretary in his official capacity. *See Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984) ("With respect to claims for non-monetary relief, the 1976 amendments to § 702 of the [APA] eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity."); *see also Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006). Sovereign immunity therefore does not protect the Secretary from Nattah's non-monetary claims.

The only other defense the federal Appellees raise to Nattah's claims against Secretary Harvey, albeit half-heartedly, is that Nattah's pleadings are insufficient. Fed. Appellees Br. at 17. They argue his pleadings are vague and do not establish any basis for any claims against the

Secretary. *Id.* (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951–54 (2009)). Although Nattah does not mention Secretary Harvey by name in each individual count of his amended complaint, we conclude his pleadings are sufficient. *See* First Am. Compl. ¶¶ 5 (stating Nattah brings Counts III, V, and VI against "all defendants"), 237 (stating "Army Intelligence officers" were aware Nattah would not voluntarily go into Iraq), 269 (stating the "United States Military" denied Nattah's right to travel), 355 (stating defendant Harvey violated Nattah's rights by requiring him to violate international law).

Because Nattah's non-monetary claims against Secretary Harvey would survive a motion to dismiss—at least on the grounds relied upon by the district court and the federal Appellees—we remand for further proceedings on those claims.

B.   *Nattah's breach of contract claim against L-3*

Nattah brings a number of claims against L-3. The district court granted L-3's motion to dismiss all of them. *Nattah*, 541 F. Supp. 2d at 233. We review the district court's dismissal for failure to state a claim *de novo*. *See Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1108 (D.C. Cir. 2008). Addressing only the claims Nattah raises on appeal, and accepting as true all factual allegations contained in his complaint, *see id.*, we conclude Nattah's breach of contract claim is sufficient.

Nattah contends he entered into an oral contract with L-3 at a "career fair." First Am. Compl. ¶¶ 92–96, 281–84. He alleges agents of L-3 outlined the terms of employment and promised: (1) he would be provided certain benefits, including air-conditioned housing; (2) he would be required to

work only in Kuwait; (3) he would not be sent to work in a war zone, including Iraq; and (4) he could be fired only for misconduct, lack of work due to termination or dimunition of L-3's contract with the U.S. government, or dereliction of duty. *Id.* ¶¶ 22, 95. He alleges L-3 subsequently breached the contract by failing to provide him the fringe benefits promised under the contract and by selling him to the U.S. military for service in Iraq. *Id.* ¶¶ 291–92. On appeal, L-3 argues Nattah makes contradictory allegations because he alleges he had an oral contract with L-3, yet he specifically states he signed an employment contract. L-3 Br. at 33–35. In the alternative, L-3 argues Nattah's pleadings are not sufficient to state a breach of contract claim under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal*, 129 S. Ct. 1937, since he does not name which individuals made the alleged oral contract or establish they had authority to contract on behalf of L-3. L-3 Br. at 36–37. The district court concluded Nattah could not rely on the alleged oral contract. *Nattah*, 541 F. Supp. 2d at 236.

As an initial matter, the fact Nattah signed an offer letter from L-3 is not necessarily inconsistent with the existence of an oral contract. To be sure, the alleged oral contract between Nattah and L-3 may be contradicted by the offer letter to the extent Nattah was promised orally he could be terminated only for cause since the offer letter describes the relationship between L-3 and Nattah as "voluntary." (J.A. 62). The offer letter, however, is silent as to the benefits Nattah alleges L-3 promised him (such as housing and meals), and, although Nattah did refer to the letter as a "contract" at least once in his amended complaint, First Am. Compl. ¶ 97, he also correctly acknowledged the letter explicitly stated it did not constitute either an express or implied contract. *Id.* ¶¶ 23, 283; (J.A. 62). Moreover, contrary to the argument of L-3's counsel, an at-will employer does not possess a unilateral right to

retroactively reduce or revoke contractually agreed-upon benefits that have already vested. *See* 19 RICHARD A. LORD, WILLISTON ON CONTRACTS § 54:36 (4th ed. 2010) (at-will employer may not retroactively deprive employee of vested rights, including employee benefits); *see also Progress Printing Co., Inc. v. Nichols*, 421 S.E.2d 428, 430 (Va. 1992) ("[T]he [at-will] employer retains the right to alter [employment and benefit] policies at any time, although rights which have already vested in the employee are enforceable for the period of time during which those rights existed."). Modification of an at-will employment contract does not extinguish either the employee's original contract or his right to sue for its breach. *See* WILLISTON § 54.36. Thus, even assuming Nattah was an at-will employee, L-3 might nonetheless be obligated to provide promised benefits.

Second, we conclude Nattah's amended complaint sufficiently describes his claim. Nattah alleges "[a]gents of defendant [L-3]" conveyed to him the terms of the oral contract, which included luxury apartment accommodations in Kuwait and assurances he would not be sent to Iraq. First Am. Compl. ¶¶ 93–94. L-3 attempts to use *Twombly,* 550 U.S. 544, and *Iqbal*, 129 S. Ct. 1937, to enunciate a blanket rule that requires a plaintiff to plead every conceivable fact or face dismissal of his claim. L-3 Br. at 37. L-3, however, points to no language in *Twombly* or *Iqbal* requiring a plaintiff to identify by name which employee(s) made the agreement when pleading a breach of contract claim. *See Iqbal*, 129 S. Ct. at 1949 (stating "Rule 8 . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (quoting *Twombly*, 550 U.S. at 555)). Moreover, Nattah alleges with specificity the several terms of the oral contract and how L-3 breached those terms. Am. Compl. ¶¶ 92–103.

Accordingly, we conclude Nattah's complaint states a claim against L-3 for breach of its oral contract with Nattah.

## C.   *Nattah's other claims against L-3*

Two of Nattah's other claims against L-3 warrant brief discussion.   First, although the district court granted L-3's motion to dismiss all claims, *see Nattah*, 541 F. Supp. 2d at 233, the court did not expressly address Nattah's claim for intentional infliction of emotional distress (IIED) against L-3 (Count VIII).   However, since we review the district court's decision granting L-3's motion to dismiss *de novo*, we are not required to remand the issue merely because the district court failed to consider it.   *See, e.g.*, *Spaziano v. Singletary*, 36 F.3d 1028, 1041 (11th Cir. 1994); *see also Gerber v. Norton*, 294 F.3d 173, 178 (D.C. Cir. 2002).   Although Nattah brings his IIED claim under Iraqi and Kuwaiti law, he does not address the elements of the claim under either law.   His pleading consists of a single sentence stating he "incorporates paragraphs 1–95 above by reference."   First Am. Compl. ¶ 278.   Those paragraphs, primarily discussing the U.S. government's alleged deception involving weapons of mass destruction in Iraq, fail to satisfy FED. R. CIV. P. 8(a)(2).   We therefore conclude Nattah's IIED claim was properly dismissed.

Second, the district court dismissed Nattah's fraud claim against L-3 (Count IX) because his "assertions fail[ed] to set out with particularity a plausible claim for fraud," as required by FED. R. CIV. P. 9(b).   *Nattah*, 541 F. Supp. 2d at 236.   We may affirm the district court's decision "on the basis of 'any grounds which . . .   support [it].'"   *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1444 (D.C. Cir. 1989).   We therefore need not decide whether Nattah's pleadings are sufficient since his claim is barred by the statute

of limitations. The statute of limitations for fraud claims in Virginia—where Nattah alleges the fraud occurred—is two years from the time the fraud was or reasonably should have been discovered. VA. CODE §§ 8.01–243(A), –249(1). Even assuming Nattah's claim did not accrue until June 2003, the date he alleges he was released from the military hospital in Germany, First Am. Compl. ¶ 117; Appellant Br. at 12, he did not file his initial complaint until April 2006, well over two years later. (J.A. 10).

With respect to Nattah's other claims against L-3, his claims against the "Six Unknown Government Employees," and his motion for leave to file an amended complaint joining certain Iraqi defendants, we affirm for the reasons set forth in the district court's memorandum opinion of March 31, 2008.

## III

For the foregoing reasons, we affirm in part, reverse in part, and remand for such proceedings as may be required, consistent with this opinion, on Nattah's non-monetary claims against the Secretary of the Army and his breach of contract claim against L-3.

*So ordered.*