*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-190

MICHAEL FRANCIS and QUEUE, LLC, APPELLANTS,

v.

MUNIR REHMAN and HAK, LLC, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-473-13)

(Hon. Natalia M. Combs Greene, Motion Judge)

(Submitted November 6, 2014     Decided February 26, 2015)

*Earl "Trey" Mayfield* and *Michael P. Lewis* were on the brief for appellants.

*Matthew August LeFande* was on the brief for appellees.

Before GLICKMAN and THOMPSON, *Associate Judges*, and PRYOR, *Senior Judge*.

THOMPSON, *Associate Judge*: In January 2013, plaintiffs/appellants Michael Francis and Queue, LLC ("Queue") brought suit against defendants/appellees Munir Rehman and HAK, LLC ("HAK"), alleging breach of contract, unjust enrichment, breach of fiduciary duties, and fraud and seeking an accounting. After the Superior Court dismissed certain of the claims and afforded appellants leave to

amend their fraud claim, appellants voluntarily dismissed the remaining claims, positioning themselves to bring this appeal challenging the court's order that granted in part appellees' motion to dismiss. Although a developed record might show that appellees are entitled to judgment on the ground that the underlying contract (for "design services") was unenforceable because appellant Francis lacked a license to practice architecture in the District of Columbia, we are persuaded that the court could not so determine at the motion-to-dismiss stage. Accordingly, we reverse the judgment and remand for further proceedings.

## I.    Background

Appellants alleged the following in their First Amended Complaint. Appellant Francis is the owner and operator of appellant Queue and is a minority owner of HAK. Appellee Rehman is a nightclub and restaurant developer and the controlling owner of HAK, which operates a bar/restaurant/nightclub establishment at 1219 Connecticut Avenue, N.W. ("1219 Connecticut").

In 2008, Francis and Queue agreed to provide "design services" for Rehman's then-new 1219 Connecticut venture. Appellants were "to be compensated through profits obtained with Mr. Francis as a co-owner of the business. Specifically, Francis and Rehman agreed that Francis would be reimbursed for his actual expenses in obtaining the various services, would be paid a fee of $25,000, and would have a 2.5% ownership interest in HAK. The "design services consisted of . . . obtaining design services from a licensed architect and third party consultant services[,]" such as those of lighting designers and structural engineers. The First Amended Complaint further alleges that, "[w]ith [Rehman's] knowledge and consent," Francis "obtained those designs from Jerald Clark, a licensed architect in the District of Columbia." It avers that "[a]ll design drawings provided for Mr. Rehman's projects by Architect Clark were prepared under his direct supervision and responsibility [and] bore his seal[.]" Appended to the First Amended Complaint is a copy of a March 2009 Joint Ownership Agreement, under which, in exchange for receiving a 2.5% ownership interest in HAK, appellant Francis was to "contribute his time, talent, and resources to performing the architectural work in designing and building out any space or spaces in the premises at 1219 Connecticut Avenue[.]"

According to the First Amended Complaint, Francis obtained the services of Clark and "advanced the expenses for[] third party consultants[,]" and design work on the 1219 Connecticut project was completed by late 2009, but Rehman paid Francis only a $15,000 fee, failed to pay Francis any of the profits of HAK or to provide its financial records, and failed to reimburse Francis for expenses.

The First Amended Complaint further alleges that Rehman and Francis entered into another agreement, which was never memorialized in writing, under which Francis would provide similar services in connection with a Rehman establishment located at 1223 Connecticut Ave., N.W. ("1223 Connecticut"). Under the agreement, Rehman was to "cover expenses [Francis] incurred in the design" and Francis was to receive "a 5% ownership interest in [the 1223 Connecticut establishment] in exchange for over $125,000.00 in services obtaining the designs from Architect Clark and procuring third party consultants for those designs." The Complaint avers that appellants provide the contracted-for services, that Francis "loaned funds to [Rehman] in the form of payments to third party consultants for [the project] . . . with the express agreement that [Rehman] would reimburse those loans[,]" and that the 1223 Connecticut establishment opened in 2010, but that Rehman has not repaid the loans and Francis has not been paid any profits owed to him.

Appellants filed their Initial Complaint on January 22, 2013, and their First Amended Complaint on May 8, 2013. Count I of the First Amended Complaint alleges that appellees breached the contract relating to 1219 Connecticut. Count II alleges that appellees breached the contract relating to 1223 Connecticut. Although captioned "Unjust Enrichment (1223 Connecticut)," Count III alleges that appellants conferred benefits on appellees by providing services and advancing expenses for both the 1219 Connecticut and 1223 Connecticut ventures and that appellees have been unjustly enriched by retaining those benefits. Counts IV and V allege breach of fiduciary duty. Count IV is based on Rehman's failure to reimburse Francis in connection with the 1219 Connecticut project and to pay him his share of HAK profits. Count V is premised on appellees' failure to reimburse appellants and to pay Francis profits in connection with the 1223 Connecticut project. Count VI alleges fraud based on appellees' false representations that Francis and Queue would be compensated and reimbursed as described above.

Appellees moved to dismiss the First Amended Complaint pursuant to Super. Ct. Civ. R. 12 (b)(6) for failure to state a claim upon which relief may be granted. On July 17, 2013, the Superior Court judge (the Honorable Natalia M.

Combs Greene) granted the motion to dismiss Count I, reasoning that "Plaintiff Francis is not a licensed architect" and that "negotiat[ing] a contract to provide architectural services while not licensed as an architect is sufficient to void [a] contract.[1] For the same reason, Judge Combs Greene also dismissed Count IV, reasoning that the breach of fiduciary duty claim for the 1219 Connecticut project arose out of the "void and unenforceable" contract for architectural and design services. Judge Combs Greene declined to dismiss Count II and related Count V, reasoning that she could not determine whether the terms of the oral agreement related to the 1223 Connecticut project were the same as the terms of the "void and unenforceable" 1219 Connecticut agreement. In addressing the Count III unjust enrichment claims for "[b]oth [p]rojects," Judge Combs Greene stated that an unlicensed architect or interior designer "cannot collect monies due on a quasi-contractual basis[,]" but declined to dismiss the count because the "circumstances under which the money was loaned . . . are unclear."[2] Finally, Judge Combs

---

[1] The court also reasoned that the allegation about the supervision and approval of an architect licensed in the District of Columbia "has no bearing on the merit of the claim[] [as] [n]either the case law, nor the [r]egulations make an exception for unlicensed architects or interior designers who are supervised by a D.C.-licensed professional."

[2] The court explained that it was not clear whether Francis loaned Rehman money "in his professional capacity" or whether the loan was "directly tied to the written agreement." Appellants assert that the court "dismissed Count III in part, to the extent it sought compensation for design services Francis had provided for

(continued…)

Greene determined that appellants had not pled their fraud count (Count VI) with specificity, and ruled that appellants would be afforded the opportunity to submit a more definite statement as to that count.

Subsequently, appellants filed a Second Amended Complaint, eliminating the dismissed counts, renumbering the remaining counts, and providing specificity regarding the fraud claim. Appellees again moved to dismiss. Judge Combs Greene denied the motion to dismiss. However, explaining that the court's July 17, 2013, ruling had "effectively gutted" their case, and in order to expedite an appeal of the portions of that ruling that dismissed the claims that appellants assert are their "primary claims," appellants thereafter moved to voluntarily dismiss without prejudice all the counts set forth in their Second Amended Complaint.[3] On January 10, 2014, the Honorable Robert Okun, to whom the matter had been

---

(…continued)
either property, but left intact his claim for the amounts he had loaned Rehman to pay consultants." We agree with this reading of the July 17, 2013, order.

[3] Appellants did not forfeit their right to challenge the July 17, 2013, order by filing the Second Amended Complaint that removed the dismissed claims. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572-73 (4th Cir. 2001) ("[I]if a claim is dismissed without leave to amend, the plaintiff does not forfeit the right to challenge the dismissal on appeal simply by filing an amended complaint that does not re-allege the dismissed claim.").

reassigned, granted the motion, and this appeal from Judge Combs Greene's July 17, 2013, ruling followed.[4]

Because appellants voluntarily dismissed the counts included in the Second Amended Complaint, the only issues on appeal are whether Judge Combs Greene erred in dismissing appellants' claims for breach of contract, for unjust enrichment insofar as that claim was based on appellants' services (rather than advances of money), and for breach of fiduciary duty in connection with the 1219 Connecticut project, all as set out in the First Amended Complaint.[5]  Our review is *de novo*.

---

[4]  After appellants filed their motion to voluntarily dismiss, appellees filed a motion for summary judgment as to the claims in the Second Amended Complaint as well as a motion for sanctions.  Because Judge Okun granted appellants' motion to voluntarily dismiss, he denied appellees' summary judgment motion as moot. He did not rule on appellees' motion for sanctions.  Although appellees argue that this court should rule that the claims appellants voluntarily dismissed are time-barred and that appellants' voluntarily dismissed fraud claim was not cognizable, we do not consider those arguments since appellees did not appeal from Judge Okun's order denying as moot their motion for summary judgment.

[5]  Appellees argue that we can uphold the July 17, 2013, judgment on the ground that appellees were entitled to summary judgment on the claims that Judge Combs Greene dismissed under Rule 12 (b)(6).  They contend that there would be no procedural unfairness in doing so since appellants "had notice of the ground upon which affirmance is proposed, as well as an opportunity to make an appropriate factual and legal presentation with respect thereto" when appellants filed their opposition to the motion for summary judgment. Appellees' Brief at 14 (quoting *In re Walker*, 856 A.2d 579, 586 (D.C. 2004) (per curiam).  However, appellees moved for summary judgment only as to the "remaining claims," i.e., the claims that were voluntarily dismissed, not as to the claims that are before us now.

(continued…)

*See Chamberlain v. American Honda Fin. Corp.*, 931 A.2d 1018, 1022 (D.C. 2007).

## II. Applicable Law

A court considering a Rule 12 (b)(6) motion must "construe the complaint in the light most favorable to the plaintiff by taking the facts alleged in the complaint as true." *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 709 (D.C. 2013). "[A] defendant raising a 12 (b)(6) defense cannot assert any facts which do not appear on the face of the complaint itself." *Carey v. Edgewood Mgmt. Corp.*, 754 A.2d 951, 954 (D.C. 2000). "When the trial court decides a Rule 12 (b)(6) motion by considering factual material outside the complaint, the motion shall be treated as if filed pursuant to Rule 56, which permits the grant of summary judgment if there are no material facts in dispute and the movant is entitled to judgment as a matter of law." *Kitt v. Pathmakers, Inc.*, 672 A.2d 76, 79 (D.C. 1996). However, "when treating a Rule 12 (b)(6) motion as a motion for summary judgment, where outside factual material is not excluded, the trial court

(…continued)
Therefore, even assuming *arguendo* that appellees' arguments that they were entitled to summary judgment on all of appellants' claims have merit, "considerations of procedural fairness preclude us from affirming on the ground now being asserted[.]" *Walker*, 856 A.2d at 586.

must give the parties notice of its intention to consider summary judgment and an adequate opportunity to present affidavits or other matters appropriate to a ruling on such a motion." *Washkoviak v. Sallie Mae*, 900 A.2d 168, 178 (D.C. 2006) (internal quotation marks omitted); *see also Herbin v. Hoeffel*, 727 A.2d 883, 886-87 (D.C. 1999) ("[F]or the trial court to have relied on those facts outside the complaint, without notifying Herbin that it intended to do so and giving him an opportunity to present additional material relevant to a summary judgment motion, is reversible error.").

"[D]ismissal under Rule 12 (b)(6) is appropriate where the complaint fails to allege the elements of a legally viable claim." *Chamberlain*, 931 A.2d at 1023. "To *prevail* on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (emphasis added). However, to state a claim for breach of contract so as to survive a Rule 12 (b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach. *Nattah v. Bush*, 605 F.3d 1052, 1058 (D.C. Cir. 2010) (reasoning that plaintiff was not required to assert in the complaint that the individuals who made oral promises to him had authority to contract on behalf of

the defendant company). To state a claim, a complaint need not assert that the alleged contract is legal in all respects; rather, illegality is an affirmative defense. *See* Super. Ct. Civ. R. 8 (c); *cf. Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 350 (9th Cir. 2014) ("[I]llegality is an affirmative defense to be pled in the defendant's answer[.]"); *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements . . . do not compel a litigant to anticipate potential affirmative defenses, . . . and to affirmatively plead facts in avoidance of such defenses."); 5 Charles Alan Wright & Arthur R. Miller, FED. PRACTICE AND PROCEDURE § 1276 (3d ed. 2002); *McNamara v. Picken*, 866 F. Supp. 2d 10, 17 (D.D.C. 2012) ("The plaintiff was not required to anticipatorily negate that defense in his pleadings, and thus the Court cannot conclude, as a matter of law, that plaintiff cannot prove any set of facts entitling him to relief.") (internal quotation marks omitted); *Harris v. Bucher*, 143 P. 796 (Cal. Ct. App. 1914) ("[I]n an action brought by one practicing architecture to recover for services rendered, it is not necessary to allege and prove compliance with the act regulating the practice of architecture, but that noncompliance therewith is a matter of defense to be pleaded and proved by defendant in the action."). An affirmative defense such as illegality can be the basis for granting a Rule 12 (b)(6) motion to dismiss "only when the [defense] is established on the face of the complaint." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

D.C. Code § 47-2853.63 (2012 Repl.) provides that "unless licensed to practice architecture . . . no person shall engage, directly or indirectly, in the practice of architecture in the District[.]" The statute defines the term "practice of architecture" to mean "rendering or offering to render services in connection with the design and construction, enlargement, or alteration of a structure . . . that ha[s] as [its] principal purpose human occupancy or habitation, as well as the space within and surrounding the[] structures." *Id.* at § 47-2853.61; *see also* 17 D.C.M.R. § 3410.1 (2008) (same). "These services include planning and providing studies, designs, drawings, specifications, and other technical submissions, and the administration of construction contracts."[6] D.C. Code § 47-2853.61; *see also* 17 D.C.M.R. § 3410.1 (same). This court held in *Sturdza v. United Arab Emirates*, 11 A.3d 251 (D.C. 2011), that the "practice of architecture" "encompasses not only the performance of architectural services, but also any negotiations and agreement to provide such services." *Id.* at 255.

---

[6] Similarly, District of Columbia regulations require a license to practice interior design, which encompasses, "providing or offering to provide consultations, preliminary studies, drawings, specifications, or any related service for the design analysis, programming, space planning, or aesthetic planning of the interior of buildings[.]" 17 D.C.M.R. §§ 3201.2, 3209.1 (2008); D.C. Code § 47-2853.101 (2012 Repl.).

The architect licensure requirement is intended "to safeguard life, health, and property, and to promote the public welfare." *Id.* at 254-55 (internal quotation marks omitted); *see also Holiday Homes, Inc. v. Briley*, 122 A.2d 229, 231 (D.C. 1956) ("The Architect's Registration Act . . . is a regulatory act designed for the public welfare[.]"). "[A] contract made in violation of a licensing statute that is designed to protect the public will usually be considered void and unenforceable, and [the] party violating the statute cannot collect monies due on a quasi-contractual basis either." *Sturdza*, 11 A.3d at 257 (internal quotation marks omitted).

While cases in some other jurisdictions explicitly recognize that an unlicensed entity may contract to provide architectural services through a licensed architect,[7] this court has not addressed whether an individual or firm must be

_____

[7] *See*, *e.g., McIver-Morgan, Inc. v. Dal Piaz*, 964 N.Y.S.2d 515, 516, 519 521 (N.Y. App. Div. 2013) (affirming contract arbitration award in favor of firm that "specializ[ed] in all facets of high-end residential interior design and architectural services," even though the firm was not a professional corporation and had no license to practice architecture, because the firm engaged as a consultant a licensed and registered architect who "had a substantive, active role in the provision of architectural services," and because the law requiring a license to practice architecture was not to be "'slavishly applied'") (citing *SKR Design Grp. v Yonehama, Inc.*, 660 N.Y.S.2d 119, 122 (N.Y. App. Div. 1997) ("That a contractor engages the services of a licensed professional to perform a portion of the services covered by the contract does not convert that contract into one for the performance

(continued…)

licensed as an architect in the District of Columbia in order to contract to perform architectural work through or under the supervision of a licensed architect. There are, however, authorities in this jurisdiction that imply that an individual without a license to practice architecture in the District of Columbia may, at least under some circumstances, prepare architectural drawings under the supervision of a licensed architect. *See Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1302 (D.C. Cir. 2002) (rejecting Sturdza's argument that her contract claims were not barred because, under an explicit exception contained in a prior statute, unlicensed architects were permitted to "prepare technical submissions . . . under the direct supervision of an architect licensed in the District"; reasoning that "[a]lthough Sturdza apparently did collaborate to some extent with a D.C. architect, . . . she never alleges that she was under his direct supervision"); *DCRA v. Keys*, No. CR-I-08-S701302, 2009 D.C. Off. Adj. Hear. LEXIS 121, at \*17-18 (OAH Aug. 28, 2009) ("Given the stringent regulatory provisions in place in the District of Columbia, an unlicensed architect should not be receiving compensation for work

---

(…continued)
of those services.")); *Walter M. Ballard Corp. v. Dougherty*, 106 Cal.App.2d 35, 40-41 (Cal. Dist. Ct. App. 1951) ("The act does not forbid a corporation to employ certified architects, have them prepare plans and specifications, and then furnish such plans and specifications to other persons . . . [T]hat the partnership may contract and collect for architectural services as long as licensed architects perform the work; and the fact that nonlicensed contractors thus share in architectural fees is immaterial.").

such as design drawings, technical submissions and administering contracts without the supervision of a licensed architect or licensed architectural firm."); 17 D.C.M.R. § 3413.5 ("No licensed architect shall affix his or her seal or signature to any technical submission that was not prepared by him or her or under his or her direct supervision or by another licensed architect and reviewed, approved, or modified and adopted under his or her direct supervision.") (implying, we think, that the individual preparing a technical submission under the supervision of the licensed architect need not be "another licensed architect"); 17 D.C.M.R. § 3411.14 ("Each office located in the District of Columbia maintained for the preparation of drawings, specifications, reports, or other professional work shall have a licensed architect who is regularly employed at the office and who directly supervises such work.").

We also note that 17 D.C.M.R. § 3403.1(b) provides that an individual applying for an architect's license by examination must "[s]atisfy the Intern Development Program (IDP) training requirements," i.e., "[t]he current version of the Intern Development Program as established and administered by NCARB [the National Council of Architectural Registration Boards]." 17 D.C.M.R. § 3499. According to the NCARB website, the IDP requires an intern to obtain, *inter alia*, a minimum of 1860 hours of experience in the practice of architecture under the

supervision of a licensed architect.  *See* NCARB, *Intern Development Program Guidelines*, 10 (2014), http://www.ncarb.org/en/Experience-Through-Internships/~/media/Files/PDF/Guidelines/IDP_Guidelines.pdf.  In other words, the regulatory scheme prescribes that an unlicensed architect *must* engage in the practice of architecture (under the supervision of a licensed architect) to obtain licensure.[8]  It thus cautions against a too-literal interpretation of D.C. Code § 47-2853.63 that does not take into account whether design work was performed under the supervision of a licensed architect.  It suggests that "a commonsense approach to the operative facts should dictate" our analysis of whether the services at issue in this case implicate the prohibition described in D.C. Code § 47-2853.63.  *See McIver-Morgan*, 964 N.Y.S.2d at 519; *see also* cases cited *supra* note 7; *cf. Highpoint Townhouses, Inc. v. Rapp*, 423 A.2d 932, 934 n.2 (D.C. 1980) ("The public protection inherent in the plumbing licensing statutes arguably would be met by an unlicensed subcontractor working 'under the immediate personal supervision' of another, licensed subcontractor.").

---

[8]  We note that, in the Second Amended Complaint, appellants alleged that Francis "was being mentored by D.C.-licensed architect Jerald Clark while Mr. Francis was in the process of registering" for the IDP through the NCARB.

## III.   Analysis

In this case, Judge Combs Greene granted appellees' Rule 12 (b)(6) motion to dismiss because "[t]he First Amended Complaint and Plaintiffs' response do not contain facts sufficient for the Court to find that a valid contract was formed between the parties." July 17, 2013, Order at 4. The court explained first that "Plaintiff Francis is not a licensed architect" and that "any agreement that he 'negotiat[ed]' or entered into for the provision of architectural, interior design, or design service is 'void and unenforceable.'" July 17, 2013, Order at 4 (quoting *Sturdza*, 11 A.3d at 252-57).

However, nowhere in the First Amended Complaint did appellants state that appellant Francis is not licensed as an architect in the District of Columbia,[9] or acknowledge that the contracted-for services entailed work by Francis for which he

---

[9]   For that fact (which Francis concedes), the court relied on appellees' motion to dismiss. As appellants argued in their opposition to the motion to dismiss, the motion relied on "facts, inferences and assumptions not in the Complaint."

was required to have an architect's license.[10]  Further, to state a claim, appellants were not required to plead Francis's licensure status or to plead that the contract was for work that appellants could lawfully perform, in order to anticipatorily negate the affirmative defense of illegality.  And, given the allegation in the First Amended Complaint that the contracted-for "design services consisted of . . . obtaining design services from a licensed architect" and that "[a]ll design drawings provided for Mr. Rehman's projects by Architect Clark were prepared under his direct supervision and responsibility, [and] bore his seal," we cannot agree with Judge Combs Greene that the face of the First Amended Complaint made it apparent that appellants offered to provide and provided services for which they were required to hold a District of Columbia architect's license.  Appellants' allegations in the First Amended Complaint that they contracted to provide "design services" for appellees' ventures and the statement in the Joint Ownership Agreement (appended to the First Amended Complaint) that appellant Francis was to "contribute his time, talent, and resources to performing the architectural work in designing and building out any space or spaces in the premises at 1219 Connecticut Avenue" are not facially inconsistent with a claim that architectural

---

[10]  Instead, appellants alleged in the First Amended Complaint that they "obtained . . . designs from Jerald Clark, a licensed architect in the District of Columbia."

services were provided only through or under the supervision of a licensed architect.

We conclude that before the court could "find that [no] valid contract was formed between the parties," it was obligated to treat appellees' motion as a motion for summary judgment and to afford appellants an opportunity to come forward with affidavits, documentation,[11] or other evidence to establish precisely what work appellants negotiated to perform and performed. The court was required to "evaluate this dispute with great attention to detail in order to determine whether [appellants'] services were of the . . . type which the state reserves to licensed [architects]."[12] *Rudow v. Holly Radio Co*., No. 88-3001, 1989 U.S. Dist. LEXIS 4995, *4, 5 (D.N.J. May 3, 1989) (holding, in case where the asserted defense to plaintiff's contract action to recover fees for his "professional services"

---

[11] For example, appellants should be afforded an opportunity to document their claim that the drawings provided pursuant to the contract bore the seal of licensed architect Clark. We note that "[a] licensed architect shall not sign or seal technical submissions unless they were prepared by the architect or under his or her direct supervision[,]"17 D.C.M.R. § 3411.15, and that "[t]he seal appearing on any technical submission shall be prima facie evidence that the technical submission was prepared by or under the direct supervision of the individual named on the seal." 17 D.C.M.R. § 3413.3.

[12] One relevant circumstance here might be appellant Francis's status as a partial owner of HAK, a status in which he at least arguably was entitled to convey to a licensed architect, through drawing or otherwise, his concepts for the design of the 1219 Connecticut establishment.

was that the "professional services" were for the unlicensed practice of law in New Jersey and that the contract was therefore illegal and unenforceable, that "questions of unlawful practice of law will turn on the particular facts presented," that the issue could "be determined only on a full and complete appreciation of the events and surrounding circumstances," that the trial court not "evaluate the merits of [appellees'] affirmative defense without reference to matters outside the pleadings[,]" and therefore, that judgment on the pleadings was not warranted) (internal quotations and brackets omitted); *see also Dunn v. Finlayson*, 104 A.2d 830, 832-33 (D.C. 1954) (reasoning, in case in which the contract sued upon contained a provision by which an architect "agree[d] to prepare all contracts between the Owner and the various sub-contractors" and the defendant owner argued that the agreement was illegal because the plaintiff architect "undertook to render legal services" even though he was not a lawyer, that there was nothing in the record to show precisely what the architect did in preparing the contracts, and holding that "[u]nder these circumstances we cannot hold that [the architect] either agreed to or did engage in the unauthorized practice of the law").

Appellees argue that the new factual allegations contained in the First Amended Complaint (such as the allegation that appellants performed work under the direct supervision of a licensed architect) are irreconcilable with the allegations in the Initial Complaint, which appellees assert appellants changed in order to

respond to the motion to dismiss. Appellees assert that the "irreconcilable" allegations of the First Amended Complaint "must be disregarded" and only the allegations in the Initial Complaint accepted as true for purposes of analysis. However, "'[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case[.]'" *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) (quoting 6 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2002)). We also do not agree that the allegations in the Initial Complaint and the First Amended Complaint are irreconcilable; the allegations that appellants "provided design services" to appellants and "performed design services" for appellee Rehman's ventures, Initial Complaint ¶¶ 1, 7, do not necessarily conflict with the allegation in the First Amended Complaint that "[t]hose design services consisted of [appellants] obtaining design services from a licensed architect[.]"[13] First Amended Complaint ¶ 8.[14] Moreover, even if the trial court or we are inclined to

---

[13] This is especially so since both complaints allege that the expenses Francis incurred "in the course of designing" the venues include sums spent for "Design Consultants." Initial Complaint ¶ 13; First Amended Complaint ¶ 19.

[14] This case is quite unlike *Green v. Niles*, No. 11 Civ. 1349, 2012 U.S. Dist. LEXIS 40297, *14-19 (S.D.N.Y. Mar. 23, 2012), a case on which appellees rely. There, the plaintiff asserted in his original complaint and first amended complaint that he "wait[ed] . . . until December 2010 to file . . . a grievance," but asserted in his second amended complaint, filed after he had received a preview of the defendant's arguments in their motion to dismiss, that "he had filed a formal

(continued…)

disbelieve some of the allegations in the First Amended Complaint, we may not "countenance . . . dismissal[] based on [such] a . . . disbelief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks omitted). It is well-established that "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely" once the record is developed. *Id.*

For the foregoing reasons, we hold that it was error to grant the motion to dismiss for failure to state a claim. Wherefore, insofar as the July 17, 2013, order dismissed appellants' breach of contract claim relating to the 1219 Connecticut project and the related unjust enrichment and breach of fiduciary duty claims, the order is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

(…continued)
grievance . . . in October 2010," a claim that the court observed "appears, quite clearly, to be a recent fabrication," which, the court reasoned, it was not required to accept as true.