[662 NYS2d 106]

In the Matter of the Arbitration between MIGDAL PLUMBING &
HEATING CORP., Respondent, and DAKAR DEVELOPERS, INC.,
Appellant.

First Department, August 28, 1997

## APPEARANCES OF COUNSEL

*John Gregory Kourakos* of counsel, Bronx *(Kourakos & Kourakos,* attorneys), for respondent.

*Dan M. Rice* of counsel, New York City *(Rice & Nisnewitz, L. L. P.,* attorneys), for appellant.

## OPINION OF THE COURT

Tom, J.

The issue to be addressed in this appeal is whether an unlicensed plumber is barred, as a matter of public policy, from recovering for work performed on commercial construction projects solely on the ground of its unlicensed status.

Respondent Dakar Developers, Inc. (Dakar), as general contractor, entered into contracts with various owners to perform construction work for three commercial projects. Dakar subcontracted with petitioner-respondent Migdal Plumbing & Heating Corp. (Migdal) to perform the plumbing and ventilation work. It is undisputed that Migdal was not licensed to perform plumbing work. Upon completion of the subcontracts, Dakar contested the adequacy of Migdal's plumbing work and refused payment. Migdal filed notices of mechan-

ic's liens against the properties where the work was performed and commenced an arbitration proceeding pursuant to the arbitration clause in the subcontract agreements. After completion of the hearing, the arbitrator rendered an award in favor of Migdal in the sum of $69,000. Migdal then brought a petition to confirm the arbitration award and Dakar cross-petitioned to vacate the award and Migdal's mechanic's liens. Dakar contends that the arbitrator displayed bias and acted improperly. Dakar also argues that the arbitration award should be vacated, and that it should be released from its contractual debt, by reason that Migdal did not have a plumber's license to perform the work. The IAS Court confirmed the award, plus interest, on the basis that the arbitrator had not acted improperly. However, the court did not address the defense of Migdal's unlicensed status. Dakar appeals the order and judgment of the IAS Court confirming the arbitration award.

As a preliminary matter, the record does not disclose that Migdal's unlicensed status was raised by Dakar during the arbitration proceeding. Although Dakar presently contends that it raised such a defense in arbitration, the record does not support this contention. Rather, the documentation from the Department of Buildings, indicating that Migdal was unlicensed, was dated September 21, 1995, which was subsequent to the arbitration award, dated August 18, 1995. Nor does the record demonstrate that the claim had been raised in arbitration in any other manner. As a result, the belated proffer of such evidence is rejected "on the well-settled rule that newly discovered evidence does not constitute a ground for challenging an arbitration award" (*Matter of Hirsch Constr. Corp. [Cooper]*, 181 AD2d 52, 53, *lv denied* 81 NY2d 701). Thus, it would have been error for the court to have "gone beyond the face of the award on a fact-finding mission and analysis and substituted its own view of the merits in determining that [an] award was against public policy" (*supra,* at 53).

Dakar's argument that the arbitration award violated public policy, on the basis that Migdal was not licensed to perform plumbing work, also fails on the merits. Although courts may invalidate arbitration awards that violate public policy, they "must exercise due restraint in this regard, for the preservation of the arbitration process and the policy of allowing parties to choose a nonjudicial forum * * * must not be disturbed by courts, acting under the guise of public policy, wishing to decide the dispute on its merits" (*Matter of Sprin-*

*zen [Nomberg]*, 46 NY2d 623, 630). Although most controversies have some public policy aspect to them, "few matters * * * have been recognized as so intertwined with overriding public policy considerations as to * * * mandate the vacatur of awards" (*supra,* at 630).

In the case at bar, neither statutory law nor case law compels a conclusion that Migdal is barred from seeking to enforce its contractual rights against the general contractor. The licensing scheme for plumbers set forth in Administrative Code of the City of New York §§ 26-131 to 26-140 and 26-141 to 26-153.1 does not specify as a penalty a bar against an unlicensed plumber from enforcement of contract rights. The Administrative Code imposes only civil penalties and criminal sanctions as remedies against an unlicensed plumber (§§ 26-140, 26-152). The regulatory scheme for plumbers under the Administrative Code differs from the more stringent licensing requirements governing home improvement contractors. The latter constitute a consumer-oriented policy specifically enacted to protect tenants and home owners against abuses and fraudulent practices by home improvement contractors (Administrative Code § 20-385 *et seq.*; CPLR 3015 [e], added by L 1983, ch 817). CPLR 3015 (e) bars an unlicensed contractor from maintaining an action against a consumer. It provides in relevant part: "Where the plaintiff's cause of action against a *consumer* arises from the plaintiff's conduct of a business which is required * * * to be licensed by the department of *consumer affairs* of the city of New York * * * the complaint shall allege * * * that plaintiff is duly licensed * * *. The failure of the plaintiff to comply * * * will permit the defendant to move for dismissal" (emphasis added).

Under this section, the statutory bar to a plaintiff contractor from maintaining an action against a customer, without pleading that the contractor is licensed, applies only in the case where that contractor is required to be licensed by the local Department of Consumer Affairs, and the defendant is a consumer. The Department of Consumer Affairs licenses home improvement contractors, but not plumbers, whose licensing is governed in New York City by the Department of Buildings. CPLR 3015 (e) governs litigation between the contractor and a consumer. The term "consumer" is undefined in the statute, but may reasonably be construed to apply to a person, family or household (*see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3015:6, drawing parallel with similar term in CPLR 105; *see also, Corcoran Marble Co. v*

*Clark Constr. Corp.*, 155 Misc 2d 49, 51 [unlicensed home improvement contractor; however, "the person seeking to invoke the license requirements * * * must actually reside in the dwelling unit in which the work is to be performed"]; *accord, Ayres v Dunhill Interiors,* 138 AD2d 303 [equating consumer class to be protected regarding home improvement contracts with actual resident of a dwelling unit]). Moreover, CPLR 3015 (e) was devised to address a particular class of contractors, home improvement contractors (*B & F Bldg. Corp. v Liebig,* 76 NY2d 689, 693-694, citing to legislative history). In the present case, it is undisputed that Migdal did not act as a home improvement contractor. Although Migdal was not licensed to perform plumbing work, it also is undisputed that this was a commercial project, and that the defendant was not a residential tenant or owner in residence. There is no sound basis to conclude that a real estate developer in the instant case is encompassed among the protected class of consumers envisaged by CPLR 3015 (e), or that a plumber is within the class of contractors so regulated.

Some older case law, concededly, did occasionally bar actions by unlicensed plumbers to recover the value of their services (*see, e.g., Johnston v Dahlgren,* 166 NY 354 [plaintiff hired as master plumber for work in defendant's house]; *accord, Bronold v Engler,* 194 NY 323; *see also, Vitanza v City of New York,* 48 AD2d 41, *affd* 40 NY2d 872 [City could rescind contract, when precondition to contract was that plumber was licensed]), although other case law articulated the contrary result (*see, e.g., De Paso v Cooper,* 43 Misc 2d 160, 161 [no legal basis to deprive an unlicensed plumber of the right to recover for work performed, especially since violation of licensing statute did not endanger " 'health or morals' "; citation within for similar decisions]). As Justice Rosenblatt pointed out in his concurring memorandum in *Todisco v Econopouly* (155 AD2d 441, 443-450, *lv dismissed* 76 NY2d 772), such cases must be viewed in an historical context that accounts for the policy objectives of courts at that time, which often also tried to reach equitable results by applying or declining to apply such a doctrine to various artisans and contractors. As jurisprudence developed, some courts distinguished between a licensing scheme's revenue purposes and purposes of public protection (*supra*). A violation of a licensing statute designed as a revenue measure does not affect the validity of a contract, while the violation of a statute designed to protect the public against fraud renders a contract unenforceable (*Anton Sattler, Inc. v Cummings,* 103

Misc 2d 4). CPLR 3015 (e) was legislatively intended both to raise revenue, and to protect the public against fraud (*see, B & F Bldg. Corp. v Liebig,* 76 NY2d 689, *supra,* citing legislative memoranda within), while title 26 of the Administrative Code, governing the licensing of plumbers, does not seem to be other than a revenue provision. The older jurisprudence, often barring such actions in furtherance of public protection, has yielded to modern authority disfavoring automatic forfeitures as sanctions for unlicensed artisan work, as being disproportionate to the wrong, unless the licensing statute specifies such a draconian sanction (*Todisco v Econopouly,* 155 AD2d 441, 443-450 [Rosenblatt, J., concurring], *lv dismissed* 76 NY2d 772, *supra).* Contrary to Dakar's contention, in light of the voluminous case law involving home improvement contractors and residential consumers, the statutory remedy barring recovery has not been expanded beyond those classes of contractors and consumers, for whom the drastic result is legislatively mandated. In the instant case, to bar recovery against a commercial customer for work done by an unlicensed plumber, a bar not required by the relevant statute or Code provision, would lead to an inequitable result and would be disproportionate to the lack of a license. Hence, even if the appeal did not turn on the enforcement of an arbitration award, public policy would not operate to have barred litigation of the contract claims.

It should also be noted that Migdal's work was overseen by a licensed general contractor, a licensed project architect and inspectors from the City Department of Housing Preservation and Development, and was signed off on by an inspector from the City Department of Buildings. Since the arbitration award did not itself facially violate public policy, Dakar lacks a basis for challenging the arbitration award on this basis (*Matter of Hirsch Constr. Corp. [Anderson],* 180 AD2d 604; *see generally, Matter of Committee of Interns & Residents [Dinkins],* 86 NY2d 478, 484).

We reject Dakar's contention that the arbitration award was violative of public policy and that plaintiff was barred from maintaining this action *ab initio.* We have considered appellant's remaining contentions and find no basis to disturb the ruling on appeal.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Charles Ramos, J.), entered June 3, 1996, granting petitioner's motion to confirm, and denying respondent's motion to vacate the arbitration award, should be affirmed, without costs.

MURPHY, P. J., SULLIVAN and NARDELLI, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered June 3, 1996, affirmed, without costs or disbursements.