Glory R Constr. Inc. v 651923 18 Ave LLC (2026 NY Slip Op 50313(U))

[*1]

Glory R Constr. Inc. v 651923 18 Ave LLC

2026 NY Slip Op 50313(U)

Decided on March 13, 2026

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 13, 2026
Supreme Court, Kings County

Glory R Construction Inc., Plaintiff,

against651923 18 Ave LLC, AE & LY Holdings, LLC, Brian Pun, Alan Yao, 6518 Ave Management LLC, 
 New York H & Y Construction Inc., Westchester Fire Insurance Company, MidFirst Bank, 123 St Plumbing & Heating Supplies Inc., Angelo Ng & Anthony Ng, Architects Studio, P.C., and Advance Structure Corp., Defendants.

Index No. 530762/2025

Law Offices of David Yan, P.C., Flushing (David Yan of counsel), for Plaintiff.Cohen Seglias Pallas Greenhall & Furman P.C., New York City (Daniel Schwartzman of counsel), for Defendants 651923 18 Ave LLC, AE & LY Holdings, LLC, Brian Pun, Alan Yao, 6518 Ave Management LLC, and Westchester Fire Insurance Company.

Aaron D. Maslow, J.

The following papers efiled on NYSCEF were used on this motion: Doc Nos. 10-59.
Upon the foregoing papers, having heard oral argument,[FN1]
and due deliberation having been had, the within motions are determined as follows.
BackgroundThis is an action by Plaintiff Glory R Construction Inc. against numerous defendants to foreclose on a mechanic's lien, for quantum meruit, for account stated, and for diversion of trust fund.[FN2]

The basic facts underpinning the dispute here are that Defendants 651923 18 Ave LLC ("651923") and AE & LY Holdings, LLC ("AE & LY") (collectively "Owners"), as owners of the real property located at 1807 66th Street, Brooklyn, New York, retained New York H & Y Construction Inc. ("H & Y") as the general contractor for the construction of a building there. In turn, H & Y retained Glory R Construction Inc. ("Glory R") to perform plumbing and fire suppression sprinkler work on the project. Glory R was not licensed to perform plumbing and fire suppression sprinkler work. Glory R engaged the services of one or more individuals or companies who were licensed plumbers to perform at least part of the plumbing work.[FN3]

On September 9, 2024, Glory R filed a mechanic's lien against the subject property in the amount of $150,000, claiming it was owed that amount. On September 17, 2024, Defendant Westchester Fire Insurance Company ("Westchester") bonded the lien on behalf of Owners. On September 19, 2024, 651923 and AE & LY demanded of Glory R that, pursuant to Lien Law § 38, it furnish a verified itemized statement in writing setting forth the items of labor and/or material and the value thereof which made up the amount for which Glory R claimed a mechanic's lien. A purported itemization executed on September 30, 2024 was deemed deficient by Owners, who commenced a special proceeding on October 14, 2024 (Matter of 651923 18 Ave LLC v Glory R Construction Inc. [Sup Ct, Kings County, Index No. 527796/2024]), seeking a compliant verified itemized statement. On March 28, 2025, this Court found in a decision and order that the September 30, 2024 statement was not sufficiently itemized or detailed so as to permit Owners to check the claim and, therefore, that it did not meet Lien Law § 38's requirements. Glory R was ordered to e-file the appropriate itemized statement within ten days of service upon it of the Court's respondent of the decision and order. On April 12, 2025, Glory R filed a more detailed itemized statement. Ten days later, on April 22, 2025, Owners served Glory R with a notice of deficiency.
The within action was commenced on September 6, 2025, by Glory R. The named defendants include Owners, Westchester, 6518 Ave Management LLC, Brian Pun, and Alan Yao. The last three of them are believed to be affiliated with Owners.[FN4]
As set forth above, Glory R's causes of action were to foreclose on a mechanic's lien, for quantum meruit, for account stated, and for diversion of trust fund. Further facts are related below as pertinent to the parties' contentions and the Court's discussion.
The within motion of Defendants Owners, Westchester, 6518 Ave Management LLC, Brian Pun, and Alan Yao (collectively "Moving Defendants") seeks the following relief: (1) consolidating this action with the Lien Law § 38 special proceeding; (2) pursuant to CPLR 3211 (a) (1), (3), and (7), dismissing this action with prejudice on the ground that Glory R did not have the required licenses to perform the plumbing and fire suppression sprinkler installation work that it alleges it performed on the construction project; (3) vacating and setting aside Glory R's mechanic's lien, and cancelling Westchester's bond; and (4) granting other just and proper relief.
Glory R cross-moved for the following relief: (1) pursuant to CPLR 2004 and 3012 (d), granting Glory R an extension of time to serve its opposition; (2) granting Glory R 14 days from the Court's ruling to provide a revised itemized statement should its last one be found deficient; and (3) granting other just and proper relief.

 Moving Defendants' Contentions
Moving Defendants' main contention is that Glory R is prohibited from collecting any money for performing any of its work because it was not licensed as a plumber and a fire suppression sprinkler contractor in New York City, whether under a cause of action for breach of contract, quantum meruit, or any other theory. Concomitantly, it is argued that Glory R's mechanic's lien is invalid. In support of their position, Moving Defendants cite to appellate decisions holding that a contractor is not entitled to compensation for performing work which required a license it was not issued, such as People ex rel. Stepski v Harford (286 NY 477 [1941]); Mikoma Elec., LLC v Otek Bldrs., LLC (233 AD3d 856 [2d Dept 2024]); Fisher Mech. Corp. v Gateway Demolition Corp. (247 AD2d 579 [2d Dept 1998]); and Millington v Rapoport (98 AD2d 765 [2d Dept 1983]).
The argument that Glory R was unlicensed plus what they claim are deficiencies in Glory R's itemized statement lead Moving Defendants to present an application to cancel the mechanic's lien. Moving Defendants point to items listed in the itemized statement which would not be covered by a mechanic's lien, such as charges for employee lunches, office rent, and payroll taxes.
Since Matter of 651923 18 Ave LLC and the action at bar involve the same mechanic's lien and there is an identicality of parties, Moving Defendants ask the Court to apply CPLR 602 (a)'s provision for consolidation of the lawsuits. They cite to case law favoring consolidation where there are common questions of law or fact, absent a showing of prejudice to a party's substantial right.

 Opposition
Glory R maintains, through an affirmation of Ivan Lamb, "an authorized representative" (NYSCEF Doc No. 47 ¶ 1), that representatives of Glory R, general contractor H & Y, and Owners met in early November 2023 to discuss the scope of the construction project. Glory R disclosed that it lacked a plumbing license. All "acknowledged, understood, and accepted" (id. ¶ 6) an arrangement whereby Glory R would retain a licensed plumber to supervise, oversee, and provide required license coverage. In exchange, the contract price between H & Y and Glory R would be at a reduced rate. At no time prior to, during, or after the execution of the contract did Owners or H & Y object to the licensing arrangement, nor did either party assert that Glory R misrepresented its licensing status. Glory R performed its work in reliance upon Owners' and H & Y's knowledge, acknowledgment, and acceptance of the disclosed arrangement.
Glory R distinguishes cases cited by Moving Defendants. For example, Fisher Mech. Corp. involved a municipal plumbing contract, not one between two private entities. Mikoma Elec., LLC involved electrical — not plumbing — work. Glory R relies on Charlebois v Weller Assoc. (72 NY2d 587 [1988]), which carved out an exception to the all-or-nothing rule concerning payment to a contractor for unlicensed work. Charlebois upheld the right to payment where the unlicensed work was incidental of a larger work project.
It is claimed by Glory R that old case law prohibiting payment for unlicensed work was abrogated by Matter of Migdal Plumbing & Heating Corp. (Dakar Devs.) (232 AD2d 62 [1st Dept 1997]), wherein a subcontractor's unlicensed status did not bar it from recovering for [*2]plumbing work performed on commercial construction projects.
The New York City Administrative Code provisions regarding licensing of plumbers imposes only civil penalties and criminal sanctions, but not forfeiture of contract rights. Glory R contrasts this with statutory provisions regarding home improvement businesses, such as those in CPLR 3015 (e), which mandate licensure as a condition precedent to recovering payment for work performed. Glory R describes Owners' attempts to disaffirm the contract under which the former performed work as "disgraceful" (NYSCEF Doc No. 40 & 68).
Additionally, citing to several cases, the last itemized statement provided by Glory R was sufficiently detailed and further itemization would be superfluous, it maintained. The categories complained about by Moving Defendants were costs related to the value of the labor.
Glory R opposes consolidation of the Lien Law § 38 special proceeding for a more detailed itemized statement in support of a mechanic's lien with the instant action, whose basis was predicated on Lien Law § 59's provision for foreclosure on a mechanic's lien.

 Discussion

 Glory R's Time to Serve Opposition
The court proceeds first to determine certain procedural issues raised by the parties. Glory R's cross-motion sought Court approval of extension of its time to serve opposition to Moving Defendants' motion. This branch of relief sought is granted. Glory R's counsel averred that he was ill during this winter season. The within issue of compensation to an unlicensed tradesman did call for extensive research and Glory R has offered case law supporting its position.
In HSBC Bank USA, N.A. v Pacifico (230 AD3d 571, 574 [2d Dept 2024]), the Court stated:
[E]ven if the defendant's opposition papers were not timely, the court had the discretion to consider them pursuant to CPLR 2214 (c) (see Fernandez v City of Yonkers, 139 AD3d 895, 896 [2016]). Indeed, a court may, in its discretion, accept late papers, should the delinquent party provide a valid excuse (see Wilcox v Newark Val. Cent. Sch. Dist., 107 AD3d 1127, 1130 [2013]; Payne v Buffalo Gen. Hosp., 96 AD3d 1628, 1629 [2012]). The court may consider " '[a]dditional factors relevant . . . includ[ing], among others, the length of the delay and any prejudice' " (Payne v Buffalo Gen. Hosp., 96 AD3d at 1629, quoting Mallards Dairy, LLC v E&M Engrs. & Surveyors, P.C., 71 AD3d 1415, 1416 [2010]). In this case, the delay was minimal and the plaintiff was not prejudiced thereby. Moreover, the defendant demonstrated a potentially meritorious opposition to the motion.Likewise here, Glory R's delay in submitting opposition was minimal and Moving Defendants were not prejudiced. Moving Defendants had sufficient time to file reply papers. The delay in the filing of Glory R's papers on these motions is excused (see CPLR 2004).

 Consolidation
The Court next proceeds to determine the issue of consolidation. A motion to consolidate pursuant to CPLR 602 (a) should be granted when two civil judicial proceedings have common questions of law or fact, absent a showing of prejudice to a substantial right by a party opposing the motion (see Calle v 2118 Flatbush Ave. Realty, LLC, 209 AD3d 961 [2d Dept 2022]). The trial court has discretion in determining whether to order consolidation (see Hershfeld v JM Woodworth Risk Retention Group, Inc., 164 AD3d 1423 [2d Dept 2018]). In exercising that discretion, the trial court's guiding principle is whether the interests of justice and [*3]judicial economy are better served by consolidation in those cases where the related actions share material questions of law or fact (see Lombardi v Lombardi, 164 AD3d 665, 668 [2d Dept 2018]).
In this case, both the Lien Law § 38 special proceeding seeking lien itemization and the lien foreclosure claims pleaded in this action concern the same lien filed by Glory R on September 9, 2024, in the amount of $150,000, that relates to the construction of a new building located at 1807 66th Street, Brooklyn, New York. Consequently, both lawsuits concern the same set of underlying facts: the same construction project, the same contracting parties, and one plot of real property. The Court finds irrelevant the fact that this action includes defendants who were not parties in the Lien Law § 38 special proceeding.
Moreover, both matters involve interconnected legal issues: the existence, scope, and validity of the same $150,000 mechanic's lien; whether Glory R's itemization was deficient, and Glory R's lack of the required license to perform the work described in its mechanic's lien. Accordingly, both actions have common questions of fact and law, and thus should be consolidated in the interests of justice and judicial economy. Proceeding with each matter separately risks inconsistent decisions and duplicative efforts.
Instead of making a showing of prejudice to a substantial right, Glory R argues that consolidation should be denied because Lien Law § 38 and Lien Law §59 are distinct statutory procedures and joining them would be impracticable. A court providently exercises its discretion in granting a motion to consolidate a Lien Law special proceeding with a lien foreclosure action where the same notice of lien is at issue, the parties to both civil judicial proceedings are substantially identical, and the party opposing consolidation has not shown prejudice of a substantial right (see Vanguard Constr. & Dev. Co., Inc. v 400 Times Sq. Assoc., LLC, 237 AD3d 488 [1st Dept 2025]). Glory R has not shown prejudice of a substantial right. Further it is no impediment to consolidation that one lawsuit is an action and the other a special proceeding (see Matter of Elias v Artistic Paper Box Co., 29 AD2d 118 [2d Dept 1967]).
The Lien Law § 38 special proceeding, Matter of 651923 18 Ave LLC v Glory R Construction Inc. [Sup Ct, Kings County, Index No. 527796/2024]), shall be consolidated into the action at bar.

 Sufficiency of Glory R's Itemized Statement
The first substantive issue to deal with is whether the last iteration, dated April 12, 2025, of Glory R's verified itemized statement in support of its mechanic's lien — dated April 12, 2025 — was sufficiently detailed.
Lien Law § 38 provides, in relevant part, that "[a] lienor who has filed a notice of lien shall, on demand in writing, deliver to the owner or contractor making such demand a statement in writing which shall set forth the items of labor and/or material and the value thereof which make up the amount for which he claims a lien, and which shall also set forth the terms of the contract under which such items were furnished."
Concerning this Lien Law provision, it has been held:
While that language "appears to confer an unrestricted right to an itemization of labor and materials, such is not the case" (F.J.C. Cavo Constr. v Robinson, 81 AD2d 1005, 1005 [1981]). Itemization is instead required only when it is necessary "to apprise the owner of the details of the lienor's claim" (id.; see Matter of Solow v Bethlehem Steel Corp., 60 AD2d 826, 826 [1978], appeal dismissed 46 NY2d 836 [1978]; cf. Matter of Burdick Assoc. Owners Corp. [Karlan Constr. Corp.], 131 AD2d 672, 672 [1987]).. . . In our view, plaintiff has sufficiently detailed the basis for its mechanic's lien, and any further itemization would be "superfluous" within the context of these pending actions (Strongback Corp. v N.E.D. Cambridge Ave. Dev. Corp., 25 AD3d 392, 393 [2006]; cf. Matter of DePalo v McNamara, 139 AD2d 646, 646-647 [1988]). Plaintiff "bears the burden of establishing its entitlement to payment" in these actions and, thus, defendants' contentions that plaintiff breached the 2011 agreement and exaggerated the amount of its mechanic's lien may be fully explored through the regular discovery process (Strongback Corp. v N.E.D. Cambridge Ave. Dev. Corp., 25 AD3d at 393). (Associated Bldg. Servs., Inc. v Pentecostal Faith Church, 112 AD3d 1130, 1131-1132 [3d Dept 2013].)The Court finds Glory R's itemization of "the items of labor and/or material and the value thereof which make up the amount for which [it] claims a lien" to be sufficient (Lien Law § 38). NYSCEF Doc No. 19 contains the itemized statement and it sets forth in detail the value of the work performed along with reference to specific contract terms:
• Underground piping installation $37,500
• Domestic copper piping installation $62,500
• No-hub drainage piping installation $62,500
• Sprinkler piping installation $62,500
• Plumbing fixtures installation $25,000
Likewise, regarding each type of labor performed, the itemization sets forth dates and how many workers performed work, the hours and rates, and citations to contract provisions. Examples of the type of labor are:
• "Underground piping installation, Install underground piping, DOB inspected signed off Completed"
• "Domestic copper piping installation, Install Domestic water pipe from 2nd to 7th Floor, rough inspection read ready"
• "No-hub Drainage piping installation, Install No hub pipe drainage pipe, from 2nd floor to Roof, rough inspection ready. Sprinkler piping installation, Install Sprinkler branch pipe and riser from 2nd floor to 7th floor" (id. § 7.)
Names of workers and their plumber title are set forth: ShanDian Lin, Senior Plumber; GuoQian Lin, Skilled Plumber; and Mao Lin, Regular Plumber. Time and hourly rates for each are included.
While Moving Defendants claim that certain items included by Glory R might not be compensable, such as employee lunches, office rent, and payroll taxes, this is mere surplusage. Indeed, if this matter proceeded through further litigation, compensation for these items could be denied if not supported by the respective contract. Moving Defendants would have the opportunity to ferret out more information through the discovery process (see Associated Bldg. Servs., Inc. v Pentecostal Faith Church, 112 AD3d at 1132). Certainly it could not be expected that Glory R would have to go into the extensive minutiae of the meals furnished for lunch, such as what types of sandwiches were purchased for the workers, for example, tuna on a bagel, ham on rye, or cream cheese and lox on a bialy.
Moving Defendants also contend that the itemization is deficient ipso facto because Gory [*4]R lacked licenses for plumbing work and fire suppression sprinkler work. The Court disagrees. Lien Law § 38 merely requires that details regarding the services provided be set forth. No provision of law renders a verified itemized statement deficient by the very fact that a contractor is unlicensed. The issue of licensure is relevant to whether the contractor is entitled to payment — not whether the itemized statement is sufficient.
For these reasons, the Court rejects Moving Defendants' position that Glory R's verified itemized statement should be held insufficient and, therefore, the latter's mechanic's lien should be vacated.

 Lack of Licensure
The Court now approaches what is the core of the dispute between Moving Defendants and Glory R: that Glory R did not have the required licenses to perform the plumbing and fire suppression sprinkler installation work. Moving Defendants maintain that ergo the Court should vacate Glory R's mechanic's lien and dismiss the foreclosure action, while Glory R counters that case law compels upholding the lien and permitting foreclosure to move forward. Both sides are correct in that each presents case law supporting its respective position in this dispute.
Section 28-408.1 of the New York City Administrative Code, entitled "Master Plumber License," states that it is unlawful for any person to "perform plumbing work unless such person is a licensed master plumber or working under the direct and continuing supervision of a licensed master plumber. . . ." Under § 28-410.1, entitled "Master Fire Suppression Piping Contractor License," sprinkler work must be performed by a licensed master fire suppression piping contractor.
Over a century ago, the Court of Appeals first established that it is unlawful for any person to "engage in, or carry on the trade, business or calling of an employing or master plumber" in New York unless they are licensed and registered to perform such work (Johnston v Dahlgren, 166 NY 354, 358 [1901]).
In Richards Conditioning Corp. v Oleet (21 NY2d 895, 896-897 [1968]), citing Johnston v Dahlgren, the Court of Appeals held: "[P]laintiff cannot recover on the agreement since the installation was not licensed and since it employed unlicensed personnel to install the air conditioning system. The air conditioning system is a 'refrigerating system' within the meaning of chapter 93 of the General Ordinances of the City of Mount Vernon and, therefore, may not be installed by unlicensed persons. Since the purpose of the regulatory scheme is to protect the public health and safety, lack of an installer's license bars recovery on the agreement [citations omitted]."
This principle of New York law means that having a proper plumbing license is a condition precedent to recovery for such work (see Vitanza v City of New York, 48 AD2d 41, 44 [2d Dept 1975], affd 40 NY2d 872 [1976]). In Vitanza, a general contractor was awarded a municipal plumbing contract. Although the contractor was not a licensed plumber, it proposed to employ a licensed master plumber to supervise the work. The City rejected the contractor's proposal to sublet a license and rescinded the contract award on the grounds that the plaintiff was not a licensed plumber. The plaintiff sued for damages, arguing that it should have been allowed to sublet its plumbing work to a licensed plumber. The plaintiff also argued that the Administrative Code of the City of New York expressly permitted the performance of plumbing work under the supervision of a licensed plumber. After the Association of Contracting Plumbers of the City of New York, Inc., intervened as a party-defendant and filed a cross motion, the lower court treated the cross motion as one for summary judgement and dismissed [*5]the plaintiff's complaint in its entirety.
On appeal, the Second Department in Vitanza affirmed the lower court's decision and held that contractors must be properly licensed to recover under a contract to do plumbing work, and the licensing requirement may not be satisfied by "employing" or "subletting" the plumbing work to a licensed plumber. (48 AD2d at 44-45). Although an exception may be made where the plumbing work may be considered "the mere incident of a larger work," that exception did not apply where the contract exceeded the balance of $50,000 (id. at 45, quoting Bronold v Engler, 194 NY 323, 325 [1909]). The Court stated that "[t]he scheme and the pattern of the [plumbing] licensing statute is to prohibit one who is not licensed from performing or contracting to perform plumbing work" (id. at 45).
The Second Department applied the strict licensing requirement again in Fisher Mech. Corp. v Gateway Demolition Corp. (247 AD2d 579), where an unlicensed plumbing subcontractor sued a general contractor for breach of contract on a New York City Transit Authority project. The subcontractor alleged that it had a master plumber inspect the site and that the general contractor knew that the subcontractor was not licensed for plumbing work. Citing Vitanza, the Second Department strictly enforced the plumbing license requirement and held that the subcontractor could not recover against the general contractor because it performed plumbing work without the requisite license. The Court stated that the rule applied even though the subcontractor hired a master plumber to inspect the site, and even though the general contractor knew that the subcontractor did not have a plumbing license.
Other decisions in the Second Department, including those involving commercial construction projects, have followed the strict compliance rule of Vitanza and Fisher Mech. Corp. and have held that a contractor or tradesman possesses no right to compensation where it is not licensed to perform the work: Millington v Rapoport (98 AD2d 765 [dismissed complaint by unlicensed home improvement contractor to foreclose on mechanic's lien for performing carpentry, painting, and construction work at defendants' recently purchased home; that homeowner aware of absence of license or even that homeowner planned to take advantage of its absence creates no exception to statutory requirement]); Dwight Getting Heating & A.C. v Jeradco, Ltd. (255 AD2d 288, 289 [2d Dept 1998] [failure of plaintiff to possess Connecticut air conditioning installation license bars recovery of sums allegedly due for work either under breach of contract theory or quantum meruit theory]); JME Enters. v Kostynick Plumbing & Heating (273 AD2d 201 [2d Dept 2000] [trial court properly vacated unlicensed plaintiff's mechanic's lien and granted summary judgment to defendant general contractor possessing fire suppression piping license who retained unlicensed plaintiff alleging breach of contract]); Electrical Contr. Solutions Corp. v Trump Vil. Section 4, Inc. (226 AD3d 746 [2d Dept 2024] [reversing trial court's decision to find that unlicensed electrical contractor cannot recover damages on a project; so strict has been judicial construction of statutory requirement through concern for public health and welfare that licensing requirement may not be satisfied by employing or subletting to an appropriately licensed person]); Mikoma Elec., LLC v Otek Bldrs., LLC, 233 AD3d 856 [denying recovery under breach of contract and quantum meruit and discharging mechanic's lien where electrical subcontractor was unlicensed]); and Nationwide HVAC Supply Corp. v Mosby (244 AD3d 737 [2d Dept 2025] [dismissing complaint where home improvement HVAC contractor was unlicensed]).
The Court of Appeals attempted to mitigate the harshness of the strict compliance doctrine barring recovery of compensation to contractors and tradesmen who lack the respective [*6]license, in Charlebois v Weller Assoc. (72 NY2d 587 [1988]). A description of Charlebois was set forth in the First Department decision of SKR Design Group v Yonehama, Inc. (230 AD2d 533, 536-538 [1st Dept 1997]):
In Charlebois, the owners engaged a contractor to build a warehouse and an addition to an existing building. The contract provided that in addition to construction services, the contractor would " 'furnish' " architectural and engineering services, which would be provided by " 'James M. Weller, P. E.' ", a licensed architect (supra, at 591). After a dispute arose over the cost, design and other alleged defects, the contractor commenced an arbitration proceeding to recover $600,000 in construction costs. In response, the owners commenced an action seeking a declaration that the contract was invalid under the Education Law because the contractor was not a licensed corporation authorized to perform engineering services.The Court of Appeals affirmed the findings of both the Supreme Court and the Appellate Division upholding the validity of the contract. Initially, the Court stated that if the contractor "either contracted itself to engage or actually engaged in the practice of engineering, then the licensing proscription would surely have been violated" (Charlebois v Weller Assocs., supra, at 592). Recovery would be barred, the Court added, even if the contractor had substantially performed the work since " 'the purpose of the regulatory scheme is to protect the public health and safety' " (supra, at 592, quoting Richards Conditioning Corp. v Oleet, 21 NY2d 895, 896).The Court noted, however, that this was not an "absolute or per se rule" (Charlebois v Weller Assocs., supra, at 593; see also, Bronold v Engler, 194 NY 323). On the contrary, it held that the policies underlying the Education Law were not violated where the contract expressly requires that the contractor "engage a specified licensed person or professional corporation to perform the tasks for which the law specifically requires a license" (supra, at 593; see also, Vereinigte Osterreichische Eisen und Stahlwerke v Modular Bldg. & Dev. Corp., 64 Misc 2d 1050, mod on other grounds 37 AD2d 525). It also held that even if a statutory violation had occurred, complete avoidance of the contract would "impose a disproportionate and unnecessary remedy and price" (supra, at 595).It is undeniable that the contract in this case also called for the retention of a "qualified"—i.e., licensed—architect to perform the regulated services. That a contractor engages the services of a licensed professional to perform a portion of the services covered by the contract does not convert that contract into one for the performance of those services (Charlebois v Weller Assocs., supra; Facilities Dev. Corp. v Miletta, 180 AD2d 97, 103). Yonehama's claim that SKR Design represented that SKR Design itself would perform the architectural services is contradicted by both the language of the contract and the fact that the plans were signed and sealed by the licensed architect. Thus, no triable issue of fact exists as to any Education Law violations (cf., Cupples Prods. Div. v Morgan Guar. Trust Co., 199 AD2d 206; Chipouras & Assocs. v 212 Realty Corp., 156 AD2d 549).Yonehama's attempt to distinguish Charlebois is unavailing. It argues that pivotal to the Court of Appeals decision was that the licensed person was actually specified in the contract. While that certainly lent support to the Court's holding, we believe Yonehama overstates its significance. Since the purpose of the licensing requirements is to ensure that the regulated work is performed by those with the necessary skills and training, we [*7]see no reason why the contract must designate a specific person. Where a licensed architect performed all of the services despite not being named in the contract, as here, the effectiveness of the regulatory scheme is not weakened. This is true because the licensed professional selected remains "inescapably subject to the educational, regulatory and punishment mechanisms of the licensing entity" (Charlebois v Weller Assocs., supra, at 592). Ultimately, it is a specific license, not a specific name, which the law requires.In Charlebois, as here, all the work was performed by a licensed person, and was substantially completed at significant cost. It would be improper for the Education Law to be used "as a sword for personal gain rather than a shield for the public good" (supra, at 595; see also, Sutton v Ohrbach, 198 AD2d 144).Charlebois was relied on by Glory R. However, in Charlebois a specific licensed professional was designated in writing to perform the work requiring licensure — unlike the situation in the case at bar. Even more so, here the subject contract between H & Y and Glory R required Glory R to be licensed to perform the work: "The Subcontractor is the person or entity identified as such in this Agreement and is referred to throughout the Subcontract Documents as if singular in number. The Subcontractor shall be lawfully licensed, if required in the jurisdiction where the Project is located." (NYSCEF Doc No. 20 § 4.1.) While Glory R claims that Owners and H & Y agreed that Glory R "retained and engaged a duly licensed plumber to supervise, oversee, and provide required license coverage for all plumbing-related work performed at the Project" (NYSCEF Doc No. 47 § 5) and that "The Owner and GC knowingly acknowledged, understood, and accepted this licensing arrangement without objection" (id. § 6), Owners deny this. However, this is irrelevant inasmuch as the contract provides, "The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral" (NYSCEF Doc No. 20 § 1.2; see Donohue v Cuomo, 38 NY3d 1, 12-13 [2022] [parol evidence not admissible to create ambiguity in written agreement between sophisticated businesses where agreement is complete, clear, and unambiguous]).
The First Department's decision in SKR Design Group, unlike the situation here, noted that the respective contract permitted the contractor to retain a licensed architect. The First Department continued its departure from the historical strict compliance doctrine in a decision which Glory R relies heavily on: Matter of Migdal Plumbing & Heating Corp. (232 AD2d 62). In that case, the general contractor for three commercial construction projects subcontracted with a company to perform plumbing and ventilation work. The subcontractor was not licensed to perform plumbing work. The general contractor refused payment to the subcontractor, arguing that its work was inadequate. The subcontractor filed mechanic's liens. An arbitrator entered an award in favor of the subcontractor. In a petition and cross-petition to respectively confirm and vacate the arbitration award, the general contractor argued that it should be released from its contractual debt because the subcontractor did not have a plumber's license to perform the work.
Aside from the general principle that arbitration awards should not be disturbed by courts, the First Department considered the issue of lack of licensure independently: "The issue to be addressed in this appeal is whether an unlicensed plumber is barred, as a matter of public policy, from recovering for work performed on commercial construction projects solely on the ground of its unlicensed status" (id. at 63). The question was answered: "Dakar's argument that the arbitration award violated public policy, on the basis that Migdal was not licensed to perform [*8]plumbing work, also fails on the merits" (id. at 64). The Court elaborated:
In the case at bar, neither statutory law nor case law compels a conclusion that Migdal is barred from seeking to enforce its contractual rights against the general contractor. The licensing scheme for plumbers set forth in Administrative Code of the City of New York §§ 26-131 to 26-140 and 26-141 to 26-153.1 does not specify as a penalty a bar against an unlicensed plumber from enforcement of contract rights. The Administrative Code imposes only civil penalties and criminal sanctions as remedies against an unlicensed plumber (§§ 26-140, 26-152). The regulatory scheme for plumbers under the Administrative Code differs from the more stringent licensing requirements governing home improvement contractors. The latter constitute a consumer-oriented policy specifically enacted to protect tenants and home owners against abuses and fraudulent practices by home improvement contractors (Administrative Code § 20-385 et seq.; CPLR 3015 [e], added by L 1983, ch 817). CPLR 3015 (e) bars an unlicensed contractor from maintaining an action against a consumer. It provides in relevant part: "Where the plaintiff's cause of action against a consumer arises from the plaintiff's conduct of a business which is required ... to be licensed by the department of consumer affairs of the city of New York ... the complaint shall allege ... that plaintiff is duly licensed .... The failure of the plaintiff to comply ... will permit the defendant to move for dismissal" (emphasis added). (Matter of Migdal Plumbing & Heating Corp., 232 AD2d at 65.)"Hence, even if the appeal did not turn on the enforcement of an arbitration award, public policy would not operate to have barred litigation of the contract claims" (id. at 67). This marked a complete break by the First Department from the strict compliance doctrine, a departure acknowledged by the First Department, who stated that "older case law" "must be viewed in an historical context that accounts for the policy objectives of courts at that time, which often also tried to reach equitable results by applying or declining to apply such a doctrine to various artisans and contractors. As jurisprudence developed, some courts distinguished between a licensing scheme's revenue purposes and purposes of public protection (supra). A violation of a licensing statute designed as a revenue measure does not affect the validity of a contract, while the violation of a statute designed to protect the public against fraud renders a contract unenforceable. . . ." (Id. at 66.) New York City's plumbing license statute was a revenue raising measure, not a consumer protection one, held the Court (see supra).
The licensing statute that requires plumbers to be licensed to do work in New York City could not be used as a sword by contracting company in an action to recoup money already paid to an unlicensed plumber for work done at a shopping center, held the First Department in Voo Doo Contr. Corp. v L & J Plumbing & Heating Co. (264 AD2d 361 [1st Dept 1999]). "[W]e have previously held that a licensing statute, such as the one at issue, may not be used 'as a sword to recoup monies already paid in exchange for . . . unlicensed services' " (id. at 361).
Relying on its decision in Matter of Migdal Plumbing & Heating Corp., in L & L Mech. Servs., Inc. v Garadice, Inc. (72 AD3d 560 [1st Dept 2010]), the First Department held that a subcontractor did not violate New York City licensing requirements where it further subcontracted sewer line work to a licensed master plumber that it later paid, and even if the subcontractor did violate city licensing requirements, such violation did not warrant forfeiture of its fee.
Accordingly, Glory R was justified in relying on Matter of Migdal Plumbing & Heating [*9]Corp. for the proposition that its lack of a plumbing license did not bar its recovery through foreclosure on its mechanic's lien.
For the reasons set forth above, Charlebois v Weller Assoc. is not controlling here; the contract provisions are different.
If we assume that Plaintiff's recitation of the facts is true — that Glory R did rely on licensed plumbers to perform the work it contracted to perform for H & Y, the general contractor — as is proper under the CPLR 3211 standard for a motion to dismiss, this Court is presented with competing case law from the First and Second Department Appellate Divisions. Under such circumstances, this Court must follow the case law of the Second Department (see Maple Medical, LLP v Scott, 191 AD3d 81 [2d Dept 2020]; Mountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1984]).
The case law in the Second Department holds that a company unlicensed to perform plumbing work or fire suppression sprinkler piping work, or any other construction type work for that matter, may not enforce or foreclose on a mechanic's lien for allegedly performing such work; there is no cause of action for either breach of contract or quantum meruit. An owner's prior knowledge does not bar the strict application of the general rule that unlicensed plumbing work is neither lienable nor recoverable (see Fisher Mech. Corp., 247 AD2d at 581; Millington v Rapoport, 98 AD2d at 766). Subletting the plumbing work to a licensed plumber is not a defense to strict enforcement of the licensing requirement (see Mikoma Elec., LLC v Otek Bldrs., LLC, 233 AD3d at 858; Electrical Contr. Solutions Corp. v Trump Vil. Section 4, Inc., 226 AD3d at 748; Fisher Mech. Corp., 247 AD2d at 581; Vitanza, 48 AD2d at 44).
To the extent that there is Second Department case law to the contrary it is distinguishable on the basis that an arbitration award will not be disturbed (see Matter of Erin Constr. & Dev. Co., Inc. v Meltzer, 58 AD3d 729 [2d Dept 2009]; Kuchar v Baker, 261 AD2d 402 [2d Dept 1999]; see also Gansburg v Blachman, 111 AD3d 935 [2d Dept 2013]). There is no arbitration award at issue in the instant case.
When a party moves pursuant to CPLR 3211 (a) (7) to dismiss an action, the standard is whether the pleading states a cause of action, not whether the proponent of the pleading has a cause of action (see Sokol v Leader, 74 AD3d 1180, 1180-1181 [2010]). In deciding the motion, the court must accept the facts as alleged by the plaintiff as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (see IntegrateNYC, Inc. v State of NY, — NY3d —, 2025 NY Slip Op 05870, *2 [2025]; Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
While a defendant is permitted to submit evidentiary material in support of a motion to dismiss pursuant to CPLR 3211 (a) (7), "[i]f the court considers evidentiary material, the criterion then becomes 'whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one' " (Sokol v Leader, 74 AD3d at 1181-1182, quoting Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). "[A]ffidavits submitted by a defendant 'will almost never warrant dismissal under CPLR 3211 unless they "establish conclusively that [the plaintiff] has no cause of action" ' " (Sokol v Leader, 74 AD3d at 1182, quoting Lawrence v Graubard Miller, 11 NY3d 588, 595 [2008]). "Indeed, a motion to dismiss pursuant to CPLR 3211 (a) (7) must be denied 'unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it' " (Sokol v Leader, 74 AD3d at 1182, quoting Guggenheimer v Ginzburg, 43 NY2d at 275).
Taking into account the affidavits/affirmations submitted by the parties on these motions, [*10]and accepting as true all averments of Glory R plus its concession that it lacked the requisite licenses to perform the work called for in the subcontract with H & Y, Moving Defendants have established conclusively that Glory R has no cause of action to recover from them claimed amounts due. The mechanic's lien filed by Glory R is not enforceable. This is per Appellate Division, Second Department case law related hereinabove. Therefore, Moving Defendants are entitled to relief pursuant to CPLR 3211 (a) (7). Moving Defendants are also entitled to relief pursuant to CPLR 3211 (a) (3), due to lack of standing on the part of Glory R. Moving Defendants are not entitled to relief pursuant to CPLR 3211 (a) (1) because the nature of the evidence submitted did not constitute documentary evidence as contemplated by such CPLR provisions (see Mikoma Elec., LLC v Otek Bldrs., LLC, 233 AD3d at 857).

 Conclusion
Accordingly, it is hereby ORDERED as follows:
(1) The motion by Defendants 651923 18 Ave LLC, AE & LY Holdings, LLC, Westchester Fire Insurance Company, 6518 Ave Management LLC, Brian Pun, and Alan Yao is GRANTED TO THE EXTENT INDICATED HEREIN.
(2) That branch of the motion by Defendants 651923 18 Ave LLC, AE & LY Holdings, LLC, Westchester Fire Insurance Company, 6518 Ave Management LLC, Brian Pun, and Alan Yao seeking consolidation is granted; and the within action, captioned Glory R Construction Inc. v 651923 18 Ave LLC, assigned Supreme Court, Kings County, Index No. 530762/2025, and the special proceeding captioned In the Matter of the Application of 651923 18 Ave LLC v Glory R Construction Inc., assigned Supreme Court, Kings County, Index No. 527796/2024, are consolidated for all purposes.
(3) The Clerk of Kings County is directed to consolidate the file of the special proceeding captioned In the Matter of the Application of 651923 18 Ave LLC v Glory R Construction Inc., assigned Supreme Court, Kings County, Index No. 527796/2024, into the file of the action captioned Glory R Construction Inc. v 651923 18 Ave LLC, assigned Supreme Court, Kings County, Index No. 530762/2025.
(4) The petition of 651923 18 Ave LLC and AE & LY Holdings in In the Matter of the Application of 18 Ave LLC v Glory R Construction Inc., assigned Supreme Court, Kings County, Index No. 527796/2024, shall be deemed further support for the motion of 651923 18 Ave LLC and AE & LY Holdings, LLC in the within action of Glory R Construction Inc. v 651923 18 Ave LLC, assigned Supreme Court, Kings County, Index No. 530762/2025.
(5) The answer of Glory R Construction Inc. in In the Matter of the Application of 18 Ave LLC v Glory R Construction Inc., assigned Supreme Court, Kings County, Index No. 527796/2024, shall be deemed incorporated into the second amended complaint of Glory R Construction Inc. in the within action of Glory R Construction Inc. v 651923 18 Ave LLC, assigned Supreme Court, Kings County, Index No. 530762/2025.
(6) The caption of the consolidated action shall read the same as that in the within action, to wit:
GLORY R CONSTRUCTION INC.,

Plaintiff,                                      Index No. 530762/2025
against
651923 18 AVE LLC, AE & LY HOLDINGS, LLC, BRIAN PUN, 
ALAN YAO, 6518 AVE [*11]MANAGEMENT LLC, NEW YORK H & Y 
CONSTRUCTION INC., WESTCHESTER FIRE INSURANCE 
COMPANY, MIDFIRST BANK, 123 ST PLUMBING & HEATING 
SUPPLIES INC., ANGELO NG & ANTHONY NG, ARCHITECTS 
STUDIO, P.C., and ADVANCE STRUCTURE CORP.,

                                Defendants.
(7) That branch of the motion by Defendants 651923 18 Ave LLC, AE & LY Holdings, LLC, Westchester Fire Insurance Company, 6518 Ave Management LLC, Brian Pun, and Alan Yao seeking dismissal of the within action pursuant to CPLR 3211 (a) (1) is denied.
(8) Those branches of the motion by Defendants 651923 18 Ave LLC, AE & LY Holdings, LLC, Westchester Fire Insurance Company, 6518 Ave Management LLC, Brian Pun, and Alan Yao seeking dismissal of the within action pursuant to CPLR 3211 (a) (3) and (7) are granted; the second amended complaint of Plaintiff Glory R Construction Inc. is dismissed as against said Defendants; and the Clerk shall enter judgment to that effect.
(9) The Mechanic's Lien in the sum of $150,000 filed by Glory R Construction Inc. on September 9, 2024, in the office of the Clerk of Kings County, State of New York, against the interests of Defendants 651923 18 Ave LLC and AE & LY Holdings, LLC, as owners of the real property described as 1807 66th Street, also known as 6519-6523 18th Avenue, Brooklyn, New York (Block 5554, Lot 1), shall be vacated and canceled; and the Clerk is directed to cancel said lien of record and to mark on the docket of such lien, as well as all other related records maintained, a statement of such cancellation, with a reference to this order and its date of entry.
(10) The Clerk of Kings County is hereby authorized and directed to return to Defendants 651923 18 Ave LLC and AE & LY Holdings, LLC a certain lien discharge bond, dated September 17, 2024 (Westchester Fire Insurance Company Bond No. K41924883), which was executed by 651923 18 Ave LLC and AE & LY Holdings, LLC, as principal, and Westchester Fire Insurance Company, as surety, and filed on or about September 17, 2024, in the office of the Clerk of Kings County, State of New York, in order to discharge the aforementioned lien pursuant to Lien Law § 19(4); and the Clerk is directed to cancel such bond of record and to mark on the docket of such bond, as well as all other related records maintained, a statement of such cancellation, with a reference to this order and its date of entry.
(11) The cross-motion of Defendants 651923 18 Ave LLC, AE & LY Holdings, LLC, Westchester Fire Insurance Company, 6518 Ave Management LLC, Brian Pun, and Alan Yao is GRANTED TO THE EXTENT INDICATED HEREIN.
(12) That branch of the cross-motion of Plaintiff Glory R Construction Inc. which seeks to extend its time for filing its opposition to the motion of Defendants 651923 18 Ave LLC, AE & LY Holdings, LLC, Westchester Fire Insurance Company, 6518 Ave Management LLC, Brian Pun, and Alan Yao is granted; and the deadline for Plaintiff Glory R Construction Inc. to file its opposition to the motion of Defendants 651923 18 Ave LLC, AE & LY Holdings, LLC, Westchester Fire Insurance Company, 6518 Ave Management LLC, Brian Pun, and Alan Yao is extended, such that its opposition is deemed timely filed and considered.
(13) That branch of the cross-motion of Plaintiff Glory R Construction Inc. which seeks 14 additional days to provide a revised itemized statement in support of its mechanic's lien is denied as academic in light of the vacatur of said mechanic's lien.
The foregoing shall constitute the decision and order of the Court.

Footnotes

Footnote 1:Transcripts may be procured from the court reporter (see Matter of Lewandowski v Office of Ct. Admin., 173 Misc 2d 335 [Sup Ct, Albany County 1997]).

Footnote 2:Different causes of action are alleged against different sets of defendants.

Footnote 3:The Court is unable to discern from the many documents submitted whether a licensed fire suppression sprinkler contractor was retained by Glory R.

Footnote 4:Other named defendants have not submitted papers in connection with the two motions before the Court.